[No. S103487. Nov. 24, 2003.]

STATE DEPARTMENT OF HEALTH SERVICES, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
THERESA V. McGINNIS, Real Party in Interest.

1032

## COUNSEL

Bill Lockyer, Attorney General, Davis S. Chaney and Jacob Appelsmith, Assistant Attorneys General, James M. Schiavenza, Barbara J. Seidman, Barbara A. Morris, Nina Thompson and Tracy S. Hendrickson, Deputy Attorneys General, for Petitioner.

Lloyd W. Pellman County, Counsel (Los Angeles), Steven J. Carnevale, Assistant County Counsel, Alan K. Terakawa and Mary E. Reyna, Deputy County Counsel, for Los Angeles County Metropolitan Transportation Authority as Amicus Curiae on behalf of Petitioner.

Liebert Cassidy Whitmore, Richard S. Whitmore and Deborah G. Leon for California League of Cities' Legal Advocacy Committee and the California State Association of Counties as Amici Curiae on behalf of Petitioner.

Paul, Hastings, Janofsky & Walker, Nancy L. Abell, Paul W. Cane, Jr., and Katherine C. Huibonhoa for Los Angeles Unified School District as Amicus Curiae on behalf of Petitioner.

Morgan, Lewis & Bockius, Thomas M. Peterson, Rebecca D. Eisen; Brobeck, Phleger & Harrison and Jennifer A. Kearns for The Employers Group as Amicus Curiae on behalf of Petitioner.

Heller Ehrman White & McAuliffe, Patricia K. Gillette and Greg J. Richardson for The California Employment Law Council and The California Bankers Association as Amici Curiae on behalf of Petitioner.

Ballard Rosenberg Golper & Savitt, John B. Golper, Linda Miller Savitt and Christine T. Hoeffner as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Marvin E. Krakow; Christopher H. Whelan; Quackenbush & Quackenbush and William C. Quackenbush for Real Party in Interest.

Patricia A. Shiu, Claudia Center and Shelley A. Gregory for The Legal Aid Society-Employment Law Center, The Impact Fund and California Women's Law Center as Amici Curiae on behalf of Real Party in Interest.

Law Offices of Jeffrey K. Winikow and Jeffrey K. Winikow for California Employment Lawyers Association as Amicus Curiae on behalf of Real Party in Interest.

## OPINION

**KENNARD, J.**—California's Fair Employment and Housing Act (Gov. Code, § 12900 et seq.)[1] (the FEHA) prohibits sexual harassment in the workplace. At issue here is whether, under the FEHA, an employer is strictly liable for hostile environment sexual harassment by a supervisor and whether the damages a plaintiff may recover from the employer in such a case include damages that the plaintiff could have avoided by reporting incidents of harassment to the employer.

We conclude that an employer is strictly liable under the FEHA for sexual harassment by a supervisor. We further conclude that the avoidable consequences doctrine applies to damage claims under the FEHA, and that under that doctrine a plaintiff's recoverable damages do not include those damages that the plaintiff could have avoided with reasonable effort and without undue risk, expense, or humiliation.

The avoidable consequences doctrine is well established and broadly applied, and nothing in the FEHA's language and structure indicates that the Legislature intended to abrogate this fundamental legal principle. On the contrary, failure to apply the avoidable consequences doctrine to FEHA sexual harassment claims could undermine a basic goal of the FEHA—to make employers the first line of defense against sexual harassment in the workplace. A rule making employers liable even for those damages that an employee could have avoided with reasonable effort and without undue risk, expense, or humiliation would significantly weaken the incentive for employers to establish effective workplace remedies against sexual harassment.

### I. FACTS AND PROCEDURAL HISTORY

Because this case comes before us after the trial court denied a motion for summary judgment, we take the facts from the record before the

---

[1] All further section references are to the Government Code unless otherwise indicated.

trial court when it ruled on that motion. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65 [99 Cal.Rptr.2d 316, 5 P.3d 874].) "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained." (*Id.* at pp. 65–66.) We take the facts from the Court of Appeal's opinion.

Plaintiff Theresa V. McGinnis began working for the State Department of Health Services (DHS) in 1992. In August 1995, plaintiff was transferred to the Maternal and Child Health Branch, where she worked under the supervision of Cary Hall. Plaintiff has alleged that Hall sexually harassed her from early 1996 until late in 1997. Hall's behavior toward plaintiff allegedly included both inappropriate comments and unwelcome physical touching. At a deposition, for example, plaintiff described an incident in July 1997 when Hall, after calling her into his office, said he would overlook her attendance problems if she would let him touch her vagina and then proceeded to grab her crotch.

In 1996, plaintiff told a coworker about Hall's behavior, but she did not formally report it to management until November 1997, when she reported Hall's harassing conduct to one of Hall's supervisors. The supervisor conveyed these allegations to DHS's Office of Civil Rights, which investigated plaintiff's allegations and later determined that Hall had violated DHS's sexual harassment policy. DHS began disciplinary action against Hall, prompting Hall to retire.

Plaintiff brought this action against Hall and DHS in superior court, alleging, among other things, sexual harassment and sex discrimination in violation of the FEHA. DHS answered with a general denial and the assertion of various affirmative defenses, including allegations that DHS "had exercised reasonable care by promulgating, instituting and disseminating throughout its workplace policies and procedures, offering training courses, and other methods designed to preclude and prevent any sexually harassing behavior and to correct against its reoccurrence if it did occur" and that "plaintiff, despite her knowledge of these policies and procedures, and participation in training courses, unreasonably failed to take advantage of them, and she unreasonably failed to otherwise avoid the alleged harm and damages for which she seeks relief . . . ."

DHS moved for summary judgment, arguing, in part, that plaintiff's failure to promptly use the policies and procedures it had put in place to eliminate sexual harassment in the workplace provided it with a complete defense to the sexual harassment claims. In support of this argument, DHS relied on the United States Supreme Court's decisions in *Burlington Industries, Inc. v.*

*Ellerth* (1998) 524 U.S. 742, 765 [141 L.Ed.2d 633, 118 S.Ct. 2257] *(Ellerth)* and *Faragher v. City of Boca Raton* (1998) 524 U.S. 775, 807 [141 L.Ed.2d 662, 118 S.Ct. 2275] *(Faragher).* Under these decisions, in an employee's action under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) (Title VII) seeking damages for workplace sexual harassment not involving a "tangible employment action," such as demotion or termination,[2] an employer may establish a partial or complete defense by proving: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *(Ellerth, supra,* at p. 765; *Faragher, supra,* at p. 807.)

The trial court denied DHS's motion for summary judgment, finding that the *Ellerth/Faragher* defense was inapplicable to sexual harassment claims under the FEHA. The court acknowledged the persuasiveness of the United States Supreme Court's reasoning in fashioning the defense, but it concluded that "in the absence of appellate authority, the application of that same reasoning to a FEHA harassment claim . . . is a policy decision best left for the Legislature."

DHS then petitioned the Court of Appeal for a writ of mandate, arguing that the *Ellerth/Faragher* defense applied to the FEHA-based claim and entitled it to summary judgment. The Court of Appeal denied the petition, holding that the FEHA imposes strict liability on employers for sexual harassment by their supervisors, and that application of the *Ellerth/Faragher* defense would be inconsistent with the statutory language and the legislative intent of the FEHA. We granted DHS's petition for review.

## II. DISCUSSION

### A. *Federal Law*

#### 1. *Title VII*

Title VII prohibits certain forms of employment discrimination, including sexual discrimination. Title VII states, in part: "It shall be an unlawful employment practice for an employer . . . [¶] . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges

---

[2] A recent decision by a federal appellate court explores the distinction, in Title VII actions, between sexual harassment that creates a hostile work environment and sexual harassment that causes or threatens to cause a tangible employment action. *(Holly D. v. California Institute of Technology* (9th Cir. 2003) 339 F.3d 1158.) That distinction is not at issue here.

of employment, because of such individual's . . . sex . . . ." (42 U.S.C. § 2000e2(a)(1).) Title VII does not specifically mention sexual harassment. Title VII defines "employer" to include any "agent" of an employer. (*Id.*, § 2000e(b).)

The United States Supreme Court has construed these Title VII provisions in a series of decisions, three of which are relevant here.

### 2. *The Meritor decision*

In *Meritor Savings Bank v. Vinson* (1986) 477 U.S. 57 [91 L.Ed.2d 49, 106 S.Ct. 2399] (*Meritor*), an employee brought an action in federal district court under Title VII against her employer, seeking damages for sexual discrimination. At the trial, she testified that her supervisor had "made repeated demands upon her for sexual favors," had "fondled her in front of other employees," had "exposed himself to her," and "even forcibly raped her on several occasions." (*Meritor, supra,* at p. 60.) She admitted that she had never reported the supervisor's conduct to any of his superiors and had never tried to use the employer's complaint procedures. (*Id.* at p. 61.)

The federal district court denied relief. Of relevance here, the district court relied both on a conclusion that the employee's relationship with the supervisor was " 'a voluntary one having nothing to do with her continued employment . . . or her advancement or promotions' " and on the employee's failure to report the supervisor's conduct to any of his superiors or to use the employer's complaint procedures. (*Meritor, supra,* 477 U.S. at p. 61.)

The United States Supreme Court held "that a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment" (*Meritor, supra,* 477 U.S. at p. 66), if the harassment was "sufficiently severe or pervasive 'to alter the condition of [the victim's] employment and create an abusive working environment' " (*id.* at p. 67). It rejected the argument that an employee suing under Title VII for sexual harassment based on a hostile work environment must prove a resulting economic loss. (*Meritor*, at pp. 67–68.) It also found that in determining whether the supervisor's sexual advances had constituted harassment prohibited by Title VII, "[t]he correct inquiry is whether [the employee] by her conduct indicated that the alleged sexual advances were unwelcome, not whether her actual participation in sexual intercourse was voluntary." (*Meritor*, at p. 68.)

The United States Supreme Court declined "to issue a definitive rule on employer liability," but it noted that "Congress' decision to define 'employer' to include any 'agent' of an employer, 42 U.S.C. § 2000e(b), surely evinces an intent to place some limits on the acts of employees for which employers

under Title VII are to be held responsible." (*Meritor, supra,* 477 U.S. at p. 72.) It added, however, that "absence of notice to an employer does not necessarily insulate that employer from liability." (*Ibid.*) The court identified a flaw in the employer's grievance procedure that could explain the employee's failure to use it. The employer's grievance procedure "apparently required an employee to complain first to her supervisor," who in this instance was the alleged perpetrator of the harassment. (*Id.* at p. 73.) As the court remarked: "[The employer's] contention that [the employee's] failure should insulate it from liability might be substantially stronger if its procedures were better calculated to encourage victims of harassment to come forward." (*Ibid.*)

### 3. *The Ellerth and Faragher decisions*

The United States Supreme Court treated *Ellerth, supra,* 524 U.S. 742, and *Faragher, supra,* 524 U.S. 775, as companion cases, issuing opinions authored by different justices on the same day. In each case, a female employee had quit her job and filed an action in federal district court claiming hostile environment sexual harassment by a male supervisor in violation of Title VII. (*Ellerth, supra,* at pp. 747–748; *Faragher, supra,* at pp. 781–782.) In each case, the employee had not complained to management before resigning. (*Ellerth, supra,* at pp. 748–749; *Faragher, supra,* at p. 782.) The employer in *Faragher* had adopted a sexual harassment policy, but had failed to effectively communicate it to the department in which the employee and her supervisors had worked. (*Faragher, supra,* at pp. 781–782.)

In *Ellerth,* the federal district court found that the supervisor's conduct had created a hostile work environment, but it nonetheless granted summary judgment for the employer because the employer "neither knew nor should have known about the conduct." (*Ellerth, supra,* 524 U.S. at p. 749.) In *Faragher,* the district court found the employer liable and awarded the employee $1 in nominal damages. (*Faragher, supra,* 524 U.S. at p. 783.)

In both cases, the United States Supreme Court announced in identical language this standard of employer liability: "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." (*Ellerth, supra,* 524 U.S. at p. 765; *Faragher, supra,* 524 U.S. at p. 807.) But the court recognized a defense that the employer could assert in this situation: "When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable

care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." (*Ellerth, supra,* at p. 765; *Faragher, supra,* at p. 807.)

The high court concluded that this affirmative defense was consistent with agency principles, which the court inferred that Congress had intended courts to apply to determine the scope of an employer's vicarious liability under Title VII for acts of a supervisor. (*Ellerth, supra,* 524 U.S. at pp. 754–762; *Faragher, supra,* 524 U.S. at pp. 793–804.) The court also concluded that Title VII incorporated the common law doctrine of avoidable consequences, and that the affirmative defense was consistent with this doctrine. (*Ellerth, supra,* at p. 764; *Faragher, supra,* at pp. 806–807.) Finally, as support for its recognition of the affirmative defense, the court relied on an analysis of the purposes underlying Title VII. The court observed that Title VII's primary purpose was "not to provide redress but to avoid harm." (*Faragher, supra,* at p. 806.) Giving employers an incentive to make reasonable efforts to prevent workplace harassment would implement this legislative purpose. (*Ibid.*) And the court found in Title VII a design "to encourage the creation of antiharassment policies and effective grievance mechanisms." (*Ellerth, supra,* at p. 764.)

In *Ellerth,* the high court directed that the matter be remanded to the federal district court for further proceedings. (*Ellerth, supra,* 524 U.S. at p. 766.) In *Faragher,* the district court's judgment for the employee was affirmed. (*Faragher, supra,* 524 U.S. at p. 810.) As a matter of law, the high court held that the employer in *Faragher* could not invoke the affirmative defense because it "had entirely failed to disseminate its policy against sexual harassment among" the affected employees and had "made no attempt to keep track of the conduct of supervisors." (*Id.* at p. 808.)

B. *State Law: The FEHA and Sexual Harassment*

■ Like Title VII, California's FEHA prohibits employment discrimination based on sex (§ 12940, subd. (a)). Unlike Title VII, the FEHA expressly and separately prohibits workplace harassment based on sex. (§ 12940, subd. (j)(1).) As here relevant, this provision reads: "It shall be an unlawful employment practice . . . [F]or an employer . . . , because of . . . sex . . . to harass an employee . . . . Harassment of an employee . . . by an employee *other than an agent or supervisor* shall be unlawful if the entity, or its agents or supervisors, *knows or should have known of this conduct and fails to take immediate and appropriate corrective action.* An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment." (*Ibid,* italics added.)

For purposes of the prohibition against workplace harassment, the FEHA defines "employer" to include "any person acting as an agent of an employer, directly or indirectly." (§ 12940, subd. (j)(4)(A).)

■ The FEHA makes it a separate unlawful employment practice for an employer to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940, subd. (k).)

■ In another section, the FEHA requires employers to distribute educational material to their employees regarding sexual harassment law and company procedures. (§ 12950; see *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1015, fn. 11 [47 Cal.Rptr.2d 478, 906 P.2d 440].)

■ The FEHA is to be construed liberally to accomplish its purposes. (§ 12993.)

## C. *Analysis*

■ California courts often look to Title VII in interpreting the FEHA. (*Reno v. Baird* (1998) 18 Cal.4th 640, 647 [76 Cal.Rptr.2d 499, 957 P.2d 1333].) But we have stated that "[o]nly when FEHA provisions are similar to those in Title VII do we look to the federal courts' interpretation of Title VII as an aid in construing the FEHA." (*Johnson v. City of Loma Linda, supra,* 24 Cal.4th at p. 74.) Moreover, this court has observed that explicit differences between federal law and the FEHA "diminish the weight of the federal precedents." (*Commodore Home Systems, Inc. v. Superior Court* (1982) 32 Cal.3d 211, 217 [185 Cal.Rptr. 270, 649 P.2d 912].)

■ The FEHA's provisions concerning employment discrimination by sexual harassment differ significantly from the provisions of Title VII. Indeed, Title VII does not specifically address sexual harassment at all. It is because Title VII lacks specific language on sexual harassment that the United States Supreme Court has been forced to infer not only a prohibition on sexual harassment in the workplace, but also a standard of employer liability and an affirmative defense to liability. Given this significant difference in wording, we give little weight to the federal precedents in this area. Nonetheless, as explained below, we find that an independent analysis of the FEHA's antiharassment provisions using state law principles leads to conclusions similar to those of the United States Supreme Court in *Ellerth, supra,* 524 U.S. 742, and *Faragher, supra,* 524 U.S. 775.

■ The FEHA imposes two standards of employer liability for sexual harassment, depending on whether the person engaging in the harassment is

the victim's supervisor or a nonsupervisory coemployee. The employer is liable for harassment by a nonsupervisory employee only if the employer (a) knew or should have known of the harassing conduct and (b) failed to take immediate and appropriate corrective action. (§ 12940, subd. (j)(1).) This is a negligence standard. (See *Brown v. Superior Court* (1988) 44 Cal.3d 1049, 1059, fn. 4 [245 Cal.Rptr. 412, 751 P.2d 470].) Because the FEHA imposes this negligence standard only for harassment "by an employee other than an agent or supervisor" (§ 12940, subd. (j)(1)), by implication the FEHA makes the employer strictly liable for harassment by a supervisor. This court and the Courts of Appeal have so stated. (See *Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1136 [90 Cal.Rptr.2d 804, 988 P.2d 1083]; *Murillo v. Rite Stuff Foods, Inc.* (1998) 65 Cal.App.4th 833, 842 [77 Cal.Rptr.2d 12]; *Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1146 [74 Cal.Rptr.2d 510]; *Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1328 [58 Cal.Rptr.2d 308]; *Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1046 [58 Cal.Rptr.2d 122]; *Kelly-Zurian v. Wohl Shoe Company, Inc.* (1994) 22 Cal.App.4th 397, 415–416 [27 Cal.Rptr.2d 457]; *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 608, fn. 6 [262 Cal.Rptr. 842].)

■ The applicable language of the FEHA does not suggest that an employer's liability for sexual harassment by a supervisor is constrained by principles of agency law. Had the Legislature so intended, it would have used language in the FEHA imposing the negligence standard of liability on acts of harassment by an employee "other than an agent," "not acting as the employer's agent," or "not acting within the scope of an agency for the employer." By providing instead in section 12940, subdivision (j)(1), that the negligence standard applies to acts of harassment "by an employee other than an agent *or supervisor*" (italics added), the Legislature has indicated that *all* acts of harassment by a supervisor are to be exempted from the negligence standard, whether or not the supervisor was then acting as the employer's agent, and that agency principles come into play only when the harasser is *not* a supervisor.[3] To the extent the United States Supreme Court derived the *Ellerth/Faragher* defense from agency principles, therefore, its reasoning is not applicable to the FEHA.

■ The legislative history of the FEHA's antiharassment provisions gives further support for our conclusion that an employer is strictly liable for *all* acts of sexual harassment by a supervisor. Documents in the legislative

---

[3] Of course, this analysis assumes the supervisor is acting in the capacity of supervisor when the harassment occurs. The employer is not strictly liable for a supervisor's acts of harassment resulting from a completely private relationship unconnected with the employment and not occurring at the workplace or during normal working hours. But instances of such harassment must be rare.

record show that section 12940, which contains the antiharassment provisions, and which was adopted in 1982 (Stats. 1982, ch. 1193, § 2, pp. 4258–4260), was based in part on then existing federal regulations promulgated by the federal Equal Employment Opportunity Commission. (See Assem. Com. on Labor and Employment, Conf. Com. Rep. on Assem. Bill No. 1985 (1981–1982 Reg. Sess.) Aug. 20, 1982.) A conference committee report observed that "federal and state regulations make it an unlawful employment practice for an employer, labor organization, or employment agency, *or their agents or supervisors*, to harass an applicant or an employee on a basis enumerated in the fair employment laws." (*Ibid.*, italics added.) The then applicable federal regulations imposed liability on employers for all acts of sexual harassment by a supervisory employee "regardless of whether the specific acts complained of were authorized or even forbidden by the employer and regardless of whether the employer knew or should have known of their occurrence." (29 C.F.R. § 1604.11(c), rescinded in 1999; see 29 C.F.R. § 1604.11 appen. A (2003) [stating that the Equal Employment Opportunity Commission rescinded 29 C.F.R. § 1604.11(c) in light of *Ellerth, supra,* 524 U.S. 742, and *Faragher, supra,* 524 U.S. 775]; see also Oppenheimer, *Exacerbating the Exasperating: Title VII Liability of Employers for Sexual Harassment Committed by Their Supervisors* (1995) 81 Cornell L.Rev. 66, 150–151.)

 Thus, we conclude that under the FEHA, an employer is strictly liable for *all* acts of sexual harassment by a supervisor. But strict liability is not absolute liability in the sense that it precludes all defenses. (*Daly v. General Motors Corporation* (1978) 20 Cal.3d 725, 733 [144 Cal.Rptr. 380, 575 P.2d 1162].) Even under a strict liability standard, a plaintiff's own conduct may limit the amount of damages recoverable or bar recovery entirely. (*Id.* at p. 737.)

 The FEHA permits individual suits for damages to enforce its provisions, but it does not specify what damages are recoverable. (See § 12965, subds. (b), (c).) This court has concluded that, in an action seeking damages for sexual harassment under the FEHA, the plaintiff may recover those damages "generally available in noncontractual actions." (*Commodore Home Systems, Inc. v. Superior Court, supra,* 32 Cal.3d at p. 221; accord, *Murillo v. Rite Stuff Foods, Inc., supra,* 65 Cal.App.4th at p. 848; see also *Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at p. 1014.) In civil actions generally, the right to recover damages is qualified by the common law doctrine of avoidable consequences.

The Restatement Second of Torts states the doctrine this way: "[O]ne injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure

after the commission of the tort." (Rest.2d Torts, § 918, subd. (1).) The comment explains that this rule "applies only to the diminution of damages and not to the existence of a cause of action." (*Id.*, com. a, p. 500.) The doctrine is applied in the law of contracts as well (see 5 Corbin on Contracts (1964) Damages § 1044, p. 275; *Brandon & Tibbs v. George Kevorkian Accountancy Corp.* (1990) 226 Cal.App.3d 442, 460 [277 Cal.Rptr. 40]) and is recognized as a rule of damages with wide application in civil cases generally. The avoidable consequences doctrine has been applied to workplace torts. (*Parker v. Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 181 [89 Cal.Rptr. 737, 474 P.2d 689]; *Rabago-Alvarez v. Dart Industries, Inc.* (1976) 55 Cal.App.3d 91, 97–99 [127 Cal.Rptr. 222].)

Although courts explaining the avoidable consequences doctrine have sometimes written that a party has a "duty" to mitigate damages, commentators have criticized the use of the term "duty" in this context, arguing that it is more accurate to state simply that a plaintiff may not recover damages that the plaintiff could easily have avoided. (See *Green v. Smith* (1968) 261 Cal.App.2d 392, 396 [67 Cal.Rptr. 796]; McCormick on Damages (1935) p. 128; Riffer and Barrowman, *Recent Misinterpretations of the Avoidable Consequences Rule: The "Duty" to Mitigate and Other Fictions* (1993) 16 Harv. J. Law & Pub. Policy 411.) A federal appellate court explained the guiding principle this way: "[T]he community's notions of fair compensation to an injured plaintiff do not include wounds which in a practical sense are self-inflicted." (*Ellerman Lines, Ltd. v. The Steamship President Harding* (2d Cir. 1961) 288 F.2d 288, 290; see also *Parker v. Twentieth Century-Fox Film Corp., supra,* 3 Cal.3d 176, 185 (dis. opn. of Sullivan, Acting C. J.) [stating that "the familiar rule requiring a plaintiff in a tort or contract action to mitigate damages embodies notions of fairness and socially responsible behavior which are fundamental to our jurisprudence"].)

█ Under the avoidable consequences doctrine as recognized in California, a person injured by another's wrongful conduct will not be compensated for damages that the injured person could have avoided by reasonable effort or expenditure. (*Green v. Smith, supra,* 261 Cal.App.2d at p. 396; accord, *Albers v. County of Los Angeles* (1965) 62 Cal.2d 250, 271–272 [42 Cal.Rptr. 89, 398 P.2d 129]; *Valencia v. Shell Oil Co.* (1944) 23 Cal.2d 840, 844 [147 P.2d 558]; *Schultz v. Town of Lakeport* (1936) 5 Cal.2d 377, 383–385 [54 P.2d 1110]; *Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1568 [54 Cal.Rptr.2d 468]; *Shaffer v. Debbas* (1993) 17 Cal.App.4th 33, 41 [21 Cal.Rptr.2d 110]; *Hunter v. Croysdill* (1959) 169 Cal.App.2d 307, 318 [337 P.2d 174]; see also *Davies v. Krasna* (1975) 14 Cal.3d 502, 515 [121 Cal.Rptr. 705, 535 P.2d 1161] ["victims of legal wrongs should make reasonable efforts to avoid incurring further damage"]; 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1382, p. 852.) The reasonableness of the injured party's efforts must be judged in light of the situation existing at the

time and not with the benefit of hindsight. (*Green v. Smith, supra,* 261 Cal.App.2d at p. 396.) "The standard by which the reasonableness of the injured party's efforts is to be measured is not as high as the standard required in other areas of law." (*Id.* at p. 397.) The defendant bears the burden of pleading and proving a defense based on the avoidable consequences doctrine. (*Burrows v. State of California* (1968) 260 Cal.App.2d 29, 33 [66 Cal.Rptr. 868].)

 Application of the avoidable consequences doctrine to hostile environment sexual harassment suits against an employer is consistent with the two main purposes of the FEHA—compensation and deterrence. (§ 12920.5; see *Flannery v. Prentice* (2001) 26 Cal.4th 572, 582–583 [110 Cal.Rptr.2d 809, 28 P.3d 860].) The doctrine encourages preventive action by both the employer and the employee while affording compensation to the employee for harms that neither party could have avoided through reasonable care. Nothing in the language of the FEHA precludes application of the avoidable consequences doctrine to an employee's action under the FEHA seeking damages for hostile environment sexual harassment by a supervisor. Accordingly, to the extent the United States Supreme Court grounded the *Ellerth/Faragher* defense in the doctrine of avoidable consequences (see *Ellerth, supra,* 524 U.S. at p. 764; *Faragher, supra,* 524 U.S. at p. 806), its reasoning applies also to California's FEHA.

 We hold, therefore, that in a FEHA action against an employer for hostile environment sexual harassment by a supervisor, an employer may plead and prove a defense based on the avoidable consequences doctrine. In this particular context, the defense has three elements: (1) the employer took reasonable steps to prevent and correct workplace sexual harassment; (2) the employee unreasonably failed to use the preventive and corrective measures that the employer provided; and (3) reasonable use of the employer's procedures would have prevented at least some of the harm that the employee suffered.

This defense will allow the employer to escape liability for those damages, and only those damages, that the employee more likely than not could have prevented with reasonable effort and without undue risk, expense, or humiliation, by taking advantage of the employer's internal complaint procedures appropriately designed to prevent and eliminate sexual harassment. Deciding when a harassed employee has first suffered compensable harm and when a reasonable employee would have reported the harassment will in many and perhaps most instances present disputed factual issues to be resolved by application of practical knowledge and experience. Employees may be reluctant to report their supervisors to higher management and an employee will often attempt informal negotiation with a supervisor, make efforts to avoid

encounters with the supervisor, or resort to other informal strategies. Delay that results from an employee's initial resort to such nonconfrontational means of dealing with supervisor harassment will have to be carefully evaluated to determine whether it was reasonable in a particular employment setting.

We emphasize that the defense affects damages, not liability. An employer that has exercised reasonable care nonetheless remains strictly liable for harm a sexually harassed employee could not have avoided through reasonable care. ▇▇▇ The avoidable consequences doctrine is part of the law of damages (see McCormick on Damages, *supra,* p. 128); thus, it affects only the remedy available. If the employer establishes that the employee, by taking reasonable steps to utilize employer-provided complaint procedures, could have caused the harassing conduct to cease, the employer will nonetheless remain liable for any compensable harm the employee suffered before the time at which the harassment would have ceased, and the employer avoids liability only for the harm the employee incurred thereafter.

▇▇▇ We stress also that the holding we adopt does not demand or expect that employees victimized by a supervisor's sexual harassment must always report such conduct immediately to the employer through internal grievance mechanisms. The employer may lack an adequate antiharassment policy or adequate procedures to enforce it, the employer may not have communicated the policy or procedures to the victimized employee, or the employee may reasonably fear reprisal by the harassing supervisor or other employees. Moreover, in some cases an employee's natural feelings of embarrassment, humiliation, and shame may provide a sufficient excuse for delay in reporting acts of sexual harassment by a supervisor. The employee's conduct is judged against a standard of reasonableness, and this standard "is not as high as the standard required in other areas of law." (*Green v. Smith, supra,* 261 Cal.App.2d at p. 397.)

▇▇▇ In other words, to take advantage of the avoidable consequences defense, the employer ordinarily should be prepared to show that it has adopted appropriate antiharassment policies and has communicated essential information about the policies and the implementing procedures to its employees. In a particular case, the trier of fact may appropriately consider whether the employer prohibited retaliation for reporting violations, whether the employer's reporting and enforcement procedures protect employee confidentiality to the extent practical, and whether the employer consistently and firmly enforced the policy. Evidence potentially relevant to the avoidable consequences defense includes anything tending to show that the employer took effective steps "to encourage victims to come forward with complaints of unwelcome sexual conduct and to respond effectively to their complaints."

(Grossman, *The First Bite Is Free: Employer Liability for Sexual Harassment* (2000) 61 U.Pitt. L.Rev. 671, 696.) "[I]f an employer has failed to investigate harassment complaints, [or] act on findings of harassment, or, worse still, [has] retaliated against complainants, future victims will have a strong argument that the policy and grievance procedure did not provide a 'reasonable avenue' for their complaints." (*Id.* at p. 699.)

The Court of Appeal here rejected application of the *Ellerth/Faragher* defense to this FEHA supervisor harassment case because it concluded that the wording of the FEHA and Title VII are materially different. The court did not consider whether the basic elements of the *Ellerth/Faragher* defense already exist in California law under the doctrine of avoidable consequences and whether that doctrine applies in actions under the FEHA. The court appeared to assume, incorrectly, that any defense based on the plaintiff employee's own fault or lack of due care would be incompatible with the imposition of strict liability on the defendant employer. As we have explained, this is not so. ▮ Strict liability does not preclude defenses based on the injured party's failure to exercise reasonable care to avoid the harm or to prevent exacerbation of the harm. (*Daly v. General Motors, supra,* 20 Cal.3d at p. 737 [144 Cal.Rptr.2d 380, 575 P.2d 1162].)

Plaintiff McGinnis argues that recognizing an avoidable consequences defense is inconsistent with an administrative regulation that reads: "An employee who has been harassed on the job by a co-employee should inform the employer . . . of the aggrievement; however, an employee's failure to give such notice is not an affirmative defense." (Cal. Code Regs., tit. 2, § 7287.6, subd. (b)(4).) We perceive no inconsistency. ▮ The regulation applies to harassment by a coworker, not harassment by a supervisor. ▮ Moreover, as we have explained, an employee's failure to report a supervisor's harassment to management, by itself, is insufficient to establish an avoidable consequences defense. To establish the defense, the employer must also show that the employee's failure to report the harassment was unreasonable under the circumstances and that, more likely than not, using the employer-provided internal remedies would have prevented at least some of the employee's claimed damages from occurring.

Plaintiff also argues that applying the avoidable consequences doctrine to FEHA sexual harassment claims would interfere with the Legislature's decision to place on employers the burden to prevent harassment and correct its effects. We disagree. As we have explained, in this context the avoidable consequences doctrine merely requires a harassment victim, when it is reasonable to do so, to use employer-provided grievance procedures and, if the employee fails to do so, denies recovery of only those damages that could have been avoided by using the employer's procedures. The underlying goal

of the legislative scheme is to provide effective measures to prevent workplace harassment. In furtherance of this goal, the FEHA requires employers to establish and promulgate antiharassment policies and to set up and implement effective grievance procedures. Insofar as the avoidable consequences doctrine encourages employees to use these procedures, it advances the legislative goal.

Plaintiff also argues that the FEHA is a no-fault system, like workers' compensation, and that the avoidable consequences doctrine does not apply to no-fault systems. We need not decide here whether or to what extent employer liability under the FEHA is comparable to employer liability under workers' compensation, because the plain language of Labor Code section 4056 belies plaintiff's claim that the avoidable consequences doctrine is inherently incompatible with a no-fault system like workers' compensation and cannot be used to defeat "full compensation." As relevant here, that section provides that "[n]o compensation is payable in case of the death . . . of an employee when his death is caused . . . by an unreasonable refusal to submit to medical treatment, or to any surgical treatment, if the risk of the treatment is, in the opinion of the appeals board, based upon expert medical or surgical advice, inconsiderable in view of the seriousness of the injury." (*Ibid.*) ▮ Thus, under the circumstances specified in Labor Code section 4056, an employee's failure to take reasonable steps to avoid further injuries can provide the employer with a partial or complete defense to a workers' compensation claim. If the avoidable consequences doctrine may be applied to a no-fault system like workers' compensation (and Labor Code section 4056 shows that it can), then there is nothing inconsistent or anomalous in applying it also to FEHA harassment claims. In structuring the FEHA, the Legislature has not expressly incorporated or excluded the avoidable consequences doctrine, thus leaving its application to be determined by the courts. Although full compensation of workplace harassment victims is an important FEHA goal, *preventing* workplace harassment is a FEHA goal of equal and perhaps even greater importance. By encouraging prompt resort to employer-provided remedies, application of the avoidable consequences doctrine can stop workplace harassment before it becomes severe or pervasive.

An amicus curiae supporting plaintiff McGinnis argues that the avoidable consequences doctrine should not be construed as imposing a requirement that an employee exhaust an employer's internal remedies. Nothing in this opinion suggests that the avoidable consequences doctrine operates in this manner. ▮ Using the employer's internal procedures will not be a prerequisite to filing a FEHA claim or bringing a FEHA action against the employer; it will merely be a fact relevant in determining the merits of an avoidable consequences defense if the employer chooses to assert such a defense.

The parties and the organizations that have submitted briefs as amici curiae have devoted much effort to debating whether allowing or disallowing the *Ellerth/Faragher* defense would better serve the FEHA's goal of eliminating sexual harassment from the workplace. DHS and the amici curiae supporting it argue that the defense provides needed incentives for the employer to establish and vigorously enforce antiharassment policies, and for harassed employees to make use of the employer-provided remedies. On the other hand, plaintiff McGinnis and the amici curiae supporting her argue that strict liability without an affirmative defense gives employers the maximum incentive to establish and enforce antiharassment policies in order to reduce the incidence of harassment. They also argue that harassed employees will use convenient and effective employer-provided complaint procedures if they believe it is safe to do so, and that employees require no additional incentive to use procedures that promise an end to the nightmare of harassment. We need not decide which party has the better argument on this point. This is an empirical question of fact better suited to legislative investigation and determination, and we decline to speculate on the correct answer.

What is not speculative is that, in enacting and amending the FEHA, the Legislature wanted employers to establish effective policies and complaint procedures to stop workplace sexual harassment, that it wanted employees victimized by workplace sexual harassment to utilize the employer's complaint procedures to the extent practicable, and that it wanted the courts to compensate the victims of workplace sexual harassment with the damages generally available in noncontractual actions. Our holding is fully consistent with each of these purposes. Accordingly, we anchor our holding in the language of the FEHA, its underlying policies, and an established principle of the law of damages.

## III. CONCLUSION AND DISPOSITION

Sexual harassment in the workplace by a supervisor is a nightmarish experience for any employee. The employee wants a prompt end to the harassing conduct, but being known as a harassment victim can be personally humiliating, and reporting acts of harassment by a supervisor carries risks that are both professional and economic. When deciding whether to report a supervisor's harassment to an employer, the harassment victim, who may already feel vulnerable and defenseless, is likely to wonder: Will my employer believe me? Will my employer fire me, demote me, label me a troublemaker, or transfer me to a position with no future?

Whether these fears are baseless depends on the employer's conduct. If the employer has established antiharassment policies, has communicated those policies to its staff, has consistently enforced its policies, has sought to

preserve confidentially, and has prevented retaliation against those who report harassment, the employee is more likely to promptly report harassment. A conscientious employer will quickly stop the misconduct of which it becomes aware. Prompt employer intervention not only minimizes injury to the victim, but also sends a clear message throughout the workplace that harassing conduct is not tolerated. Employers who take seriously their legal obligation to prevent harassment are an employee's best protection against workplace harassment. But an employer, no matter how conscientious, cannot take action to stop improper conduct without some reason to suspect that sexual harassment is occurring.

A generally recognized principle of the law of damages is that "a party must make reasonable efforts to mitigate damages, and recovery will not be allowed for damages that a party should have foreseen and could have avoided by reasonable effort without undue risks, expense, or humiliation." (*Home Life Ins. Co. v. Clay* (1989) 13 Kan.App.2d 435, 445 [773 P.2d 666, 674].) This principle applies broadly to many different sorts of legal claims, including claims based on strict liability, and we conclude that it applies also to employee actions under the FEHA for hostile environment sexual harassment by a supervisor. An employer may invoke this principle by proving that the plaintiff employee unreasonably failed to make use of employer-provided antiharassment remedies and that it is more likely than not that at least some of the employee's damages would have been avoided by reasonable use of these internal procedures. The trial court and the Court of Appeal erred in concluding otherwise. Whether DHS here presented sufficient evidence in support of its motion for summary judgment to establish the defense and, if so, whether the defense it established is partial or complete, are predominately factual questions that are not before us and on which we venture no opinion.

We reiterate the limits of our holding. An employer continues to be strictly liable for hostile environment sexual harassment by a supervisor. An employee's failure to report harassment to the employer is not a defense on the merits to the employee's action under the FEHA, but at most it serves to reduce the damages recoverable. And it reduces those damages only if, taking account of the employer's antiharassment policies and procedures and its past record of acting on harassment complaints, the employee acted unreasonably in not sooner reporting the harassment to the employer.

The Court of Appeal's judgment is reversed, and the matter is remanded to that court for further proceedings consistent with this decision.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Brown, J., Moreno, J., concurred.

**MORENO, J.**, Concurring.—As the majority states: "In structuring the [Fair Employment and Housing Act (FEHA)], the Legislature has not expressly incorporated or excluded the avoidable consequences doctrine, thus leaving its application to be determined by the courts." (Maj. opn., *ante*, at p. 1047.) I agree with this statement, and with the majority opinion in general. But I would also add that the Fair Employment and Housing Commission (FEHC) may also have a role to play in determining how the avoidable consequences doctrine is to be applied under the FEHA.

The Legislature has authorized the FEHC to "adopt, promulgate, amend, and rescind suitable rules, regulations, and standards (1) to interpret, implement, and apply all provisions of this part [i.e., the FEHA] . . . ." (Gov. Code, § 12935, subd. (a).) The majority assumes that application of the avoidable consequences doctrine to the supervisorial sexual harassment context is appropriate and workable. I have no reason to doubt these conclusions, but the FEHC may have a different perspective, based on its own regulatory experience, that would usefully supplement our own opinion based on general legal principles. This point is in special need of emphasis because we did not have the benefit of an FEHC amicus curiae brief, no doubt at least in part because the State of California is the defendant in this case. I do not understand anything in the majority opinion to preclude the FEHC from issuing regulations pursuant to Government Code section 12935, subdivision (a), that further refine, adapt and even narrow the avoidable consequences defense in order to fit it to the unique context of sexual harassment in the workplace.