Filed 7/28/15  Felton v. Hi-Tech Electronic Manufacturing Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| NORMAN FELTON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HI-TECH ELECTRONIC MANUFACTURING COMPANY et al.,<br><br>    Defendants and Respondents. | D065666<br><br><br>(Super. Ct. No. 37-2012-00086012-CU-OE-CTL |


APPEAL from a judgment of the Superior Court of San Diego County, Richard E.L. Strauss, Judge.  Reversed with directions.

The Hayes Law Firm and Christopher J. Hayes for Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester, Darin L. Wessel and Kenneth S. Kawabata for Defendants and Respondents.

Plaintiff Norman Felton is a former employee of defendant Hi-Tech Electronic Manufacturing Company (Hi-Tech).  Defendant Thai Nguyen is Hi-Tech's chief operating officer (COO).  Felton appeals from a judgment entered after the trial court

granted summary judgment in favor of Hi-Tech and Nguyen (defendants) on Felton's complaint alleging sexual harassment and other violations of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), wrongful termination, negligent infliction of emotional distress, and violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) (UCL).[1]  Felton contends that (1) he presented sufficient evidence of pervasive and severe harassment by a supervisor to preclude summary adjudication of his causes of action for sexual harassment, failure to prevent harassment and discrimination, and negligent infliction of emotional distress; (2) the court erred in summarily adjudicating his cause of action for sexual harassment on the ground there was no evidence that the alleged acts of harassment were motivated by sexual desire; (3) the evidence he presented of severe and pervasive sexual harassment was sufficient to preclude summary adjudication of his cause of action for wrongful termination by constructive discharge and cause of action for violation of the UCL.  We conclude Felton presented sufficient evidence of pervasive and severe sexual harassment to defeat defendants' motion for summary judgment and, accordingly, reverse the judgment.

---

[1]     Felton, an African-American male, also alleged causes of action for racial harassment and discrimination.  However, he states in his opening brief that he is not appealing the summary adjudication of those causes of action.

FACTUAL AND PROCEDURAL BACKGROUND

Nguyen is the COO of Hi-Tech, a company that provides contract manufacturing and electronics manufacturing services to clients in the defense industry.[2] Felton was employed as a "facilities maintenance employee" or janitor from August 2010 until he quit his employment in March 2012. Before Hi-Tech hired Felton, he worked at the Hi-Tech facility for one year as an employee of a staffing agency named Coverall.

Felton testified in his deposition that while he was working at Hi-Tech as a Coverall employee and after Hi-Tech hired him, Nguyen made offensive lewd comments to Felton and told him jokes "about gays and stuff." Nguyen's offensive comments and joke telling occurred once or twice a month, usually when he and Felton were in the men's restroom "one-on-one" in the evening after most of the other employees had left work. Felton complained to his immediate supervisor, Paul Le, about Nguyen's offensive conduct, but did not ask Le to do anything about it because he thought he "could handle it." Felton later told Nguyen directly that he did not think Nguyen's jokes were funny. Nguyen responded, "What about Richard Pryor and Eddie Murphy?"

On the morning of March 6, 2012, Felton entered the men's restroom at Hi-Tech. Nguyen was in the restroom using a urinal and five to seven other male employees were also in the restroom. Nguyen turned to Felton and said, "Norman, do you want to make

_____

[2] In their appellate briefs, both parties refer to Nguyen as Hi-Tech's chief *executive* officer or CEO. However, Felton's complaint and defendants' separate statement of undisputed facts in support of their summary judgment motion state that Nguyen was Hi-Tech's chief *operating* officer or COO.

$50?" Felton replied, "Yes, what do you want me to do?" Nguyen responded, "Pull your pants down, bend over, and let me stick my dick in your ass." Nguyen and the other men in the restroom laughed, and as Nguyen left the restroom, he walked past Felton and said, "I am the CEO of the company. Don't you know you do what the CEO tells you to do?" Felton said, "I sure did walk into that, didn't I?" He testified that he felt threatened because Nguyen and the other men in the restroom were speaking in Vietnamese, and he did not know what they were saying or what they might be planning to do to him.

Felton testified that the March 6 incident was a severe incident that offended him greatly and caused him to be ill. He left the restroom holding his stomach in disgust and went outside of the building to clear his head because he was "greatly offended." He felt "dizzy" and "woozy." He considered telling Le about the incident, but Le was not there. Felton did not report the incident to anyone else at Hi-Tech because he was not aware that Hi-Tech had a human resources department or any policy directing that acts of harassment be reported to anyone within the company. The day after the incident, he decided to report the incident to the EEOC (Equal Employment Opportunity Commission).[3]

Felton testified that after the March 6 incident, his work days at Hi-Tech became "very hard and long." He tried to continue working there, but quit on March 15, 2012. He testified that the March 6 incident "was the straw that broke the camel's back. Broke

---

[3] Felton's testimony indicates that he made an appointment with the EEOC. It is unclear from the record whether Felton filed a claim with the EEOC.

my back also."  When asked if he just felt that he wanted to quit, Felton testified, "Just me as a person and my dignity and my manhood and to have a statement like that directed to you knowing that people don't say that to people."

Felton filed a complaint against defendants that included a third cause of action for sexual harassment in violation of the FEHA, fourth cause of action for failure to prevent harassment and discrimination, fifth cause of action for wrongful termination in violation of the FEHA, sixth cause of action for negligent infliction of emotional distress, and seventh cause of action for violation of the UCL.  Defendants filed a motion for summary judgment or, alternatively, summary adjudication of each of the causes of action in the complaint.

The court granted the motion for summary judgment in December 2013. Regarding the third cause of action for sexual harassment, the court cited *Kelley v. The Conco Companies* (2011) 196 Cal.App.4th 191 (*Kelley*) as the basis for its ruling that "proof of sexual motivation or desire is required in order to allege a same-sex sexual harassment claim."  The trial court concluded that like the plaintiff in *Kelley*, Felton had provided no evidence that the statements forming the basis of his sexual harassment claim "were motivated by sexual desire/attraction or resulted from [Felton's] actual or perceived sexual orientation."  The court acknowledged Felton's argument that *Kelley* was inapplicable because the Legislature had enacted an amendment to Government Code section 12940, subdivision (j), clarifying that for purposes of defining sexual harassment, sexually harassing conduct need not be motivated by sexual desire.  However, the court ruled that because the amendment was not operative until January

5

2014, *Kelley* "remain[ed] applicable authority" and required summary adjudication of the third cause of action.

The court granted summary adjudication of the fourth through seventh causes of action based on Felton's failure to "establish his causes of action for racial or sexual harassment." The court entered judgment in favor of defendants.

DISCUSSION

I. *Standard of Review*

A motion for summary judgment or adjudication must be granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "A defendant 'moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' [Citation.] A defendant may meet this burden either by showing that one or more elements of a cause of action cannot be established or by showing that there is a complete defense." (*Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 894 (*Mills*).)

"If the defendant's prima facie case is met, the burden shifts to the plaintiff to show the existence of a triable issue of material fact with respect to that cause of action or defense. [Citations.] ' "When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork." ' [Citation.] [¶] Ultimately, the moving party 'bears the burden of persuasion that there is

6

no triable issue of material fact and that he is entitled to judgment as a matter of law.' [Citation.]

"We review a summary judgment or summary adjudication ruling de novo to determine whether there is a triable issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. [Citation.] 'In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment.' [Citation.] '[W]e are not bound by the trial court's stated reasons for its ruling on the motion; we review only the trial court's ruling and not its rationale.' " (*Mills, supra,* 166 Cal.App.4th at pp. 894-895.) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [plaintiff's] evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768; *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843.)

## II.  *Cause of Action for Sexual Harassment*

The FEHA makes it an unlawful employment practice to harass an employee because of sex.  (Gov. Code, § 12940, subd. (j)(1); *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 277 (*Lyle*).)  " '[T]he prohibition against sexual harassment includes protection from a broad range of conduct, ranging from expressly or impliedly conditioning employment benefits on submission to or tolerance of unwelcome sexual advances, to the creation of a work environment that is hostile or abusive on the basis of sex.' " (*Lyle, supra,* 38 Cal.4th at p. 277.)  Where, as here, the plaintiff does not

7

allege that he or she was subjected to unwelcome sexual advances *as a condition of employment*, but rather alleges that defendants created a hostile or abusive work environment, the plaintiff need not show evidence of unwelcome sexual advances. (*Id.* at pp. 277-278.)

"A hostile work environment sexual harassment claim requires a plaintiff employee to show (1) he or she was subjected to unwelcome sexual advances, conduct or comments; (2) the harassment was based on sex; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." (*Lewis v. City of Benicia* (2014) 224 Cal.App.4th 1519, 1524 (*Lewis*).) "Although annoying or 'merely offensive' comments in the workplace are not actionable, conduct that is severe *or* pervasive enough to create an objectively hostile or abusive work environment is unlawful, even if it does not cause psychological injury to the plaintiff." (*Lyle, supra,* 38 Cal.4th at p. 283, italics added.)

" '[T]he evidence in a hostile environment sexual harassment case should not be viewed too narrowly: "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.' [Citation.] . . . [T]hat inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. . . . The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensibility to social context, will enable courts and juries to distinguish

8

between simple teasing or roughhousing . . . and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." ' " (*Lyle, supra,* 38 Cal.4th at p. 283.)

" 'The working environment must be evaluated in light of the totality of the circumstances: "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening *or humiliating*, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." ' " (*Lewis, supra,* 224 Cal.App.4th at p. 1529, italics added.)

A plaintiff in a sexual harassment action must show that the alleged harassing conduct constituted discrimination *because of sex*. (*Lyle, supra,* 38 Cal.4th at p. 280; *Singleton v. United States Gypsum Co.* (2006) 140 Cal.App.4th 1547, 1559 (*Singleton*).) In the present case, the trial court followed *Kelley* in ruling that to meet that requirement, Felton had to present evidence of sexual motivation or desire on the part of Nguyen. However, as the trial court expressly acknowledged in its summary judgment order, the Legislature amended Government Code section 12940, subdivision (j) in 2013 to clarify that for purposes of defining sexual harassment, sexually harassing conduct need not be motivated by sexual desire.[4] *Singleton*, which was decided before the 2013 amendment

---

4    As of January 1, 2014, Government Code section 12940, subdivision (j)(4)(C) provides: "For purposes of this subdivision, 'harassment' because of sex includes sexual harassment, gender harassment, and harassment based on pregnancy, childbirth, or related medical conditions. Sexually harassing conduct need not be motivated by sexual desire."

to Government Code section 12940, subdivision (j), and *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1239 (*Taylor*) illustrate that sexual harassment by a member of the same sex as the plaintiff need not be motivated by sexual desire to be actionable under the FEHA.

In *Singleton* the Court of Appeal reversed a summary judgment in favor of defendant employer on the plaintiff employee's complaint alleging sex discrimination and harassment. The heterosexual male plaintiff claimed he was sexually harassed by two male coworkers who repeatedly called him "Sing-a-ling," a reference to a homosexual character in a movie. (*Singleton, supra,* 140 Cal.App.4th at pp. 1551-1552.) Plaintiff claimed that one of the coworkers made statements that "challenged [him] as a man," such as suggesting that he was wearing a G-string and making comments about his performing oral sex on his supervisor and engaging in anal sex. (*Id.* at p. 1553.) The other coworker also allegedly described to plaintiff how he would engage in anal and oral sex with plaintiff, and he told plaintiff that the reason plaintiff was still employed was that he (plaintiff) was performing oral sex on his supervisor. (*Ibid.*) Plaintiff "testified that, as a result of [the coworkers'] comments and taunting, work became a 'living hell,' and that his performance was adversely affected." (*Id.* at p. 1554.) The plaintiff thought that the coworkers were harassing him because, among other reasons, he had complained to management about one of them having sabotaged equipment. (*Id.* at p. 1555.)

The *Singleton* court found there were triable issues of fact as to whether the plaintiff was subject to sexual harassment in violation of the FEHA. (*Singleton, supra,* 140 Cal.App.4th at pp. 1551, 1564.) The court concluded there was evidence that the

10

plaintiff was disparately treated because of his sex, as shown by plaintiff's own deposition testimony that the harassing comments his coworkers directed at him challenged him as a man. (*Id.* at pp. 1561-1562.) The court reasoned that "[plaintiff] recognized, as would any reasonable heterosexual male, that [his coworkers] targeted [his] heterosexual identity, and attacked it by and through their comments. [¶] . . . [G]iven that [the coworkers] had targeted [plaintiff's] identity as a heterosexual male, it is axiomatic that they would treat women 'differently,' i.e., not attack them for the same reason. It follows that the harassment was 'because of sex,' i.e., it employed attacks on [plaintiff's] identity as a heterosexual male as a tool of harassment." (*Id.* at p. 1562.)

The *Singleton* court further concluded that "[t]he social context within which [the coworkers] acted also [made] clear that what these two men intended to do was to harass [plaintiff]." (*Singleton, supra,* 140 Cal.App.4th at p. 1564.) Noting that the coworkers were " 'acting out . . . their anger and rage at [plaintiff,]' " the *Singleton* court concluded "there is no requirement that the *motive* behind the sexual harassment must be sexual in nature. '[H]arassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex.' [Citations.] Sexual harassment occurs when, as is alleged in this case, sex is used as a weapon to create a hostile work environment." (*Singleton, supra,* 140 Cal.App.4th at p. 1564.)

Following *Singleton*, the Court of Appeal in *Taylor* likewise concluded that actionable sexual harassment need not be motivated by sexual desire. In *Taylor* the Court of Appeal concluded that substantial evidence supported a jury verdict in favor of the plaintiff on his cause of action for hostile work environment sexual harassment. Two

11

male supervisors of the heterosexual male plaintiff had repeatedly called plaintiff a "queer," "faggot," "homo," and "gay porn star." (*Taylor, supra,* 222 Cal.App.4th at p. 1234.) "When respondent had an infection on his face, [one of his supervisors] said, in the drilling crew's presence, 'let me cum [(ejaculate)] on your face, it will make it clear right up.' The crew laughed. [Plaintiff] 'was extremely disturbed and humiliated.' " (*Ibid.*) The supervisor also "posted a photograph of [plaintiff] on a wall inside the employees' restroom. The photograph 'had a big target around [plaintiff's] mouth, and [in] the left corner it said "Give me the money shot." ' [Plaintiff's] counsel argued to the trial court that the target and accompanying notation 'indicate an act of oral sex.' [Plaintiff] was 'deeply disturbed' by the posting of the photograph: 'Every single member in [his] crew went in this restroom . . . [and] saw [his] picture, and they were laughing about it.' " (*Ibid.*) When the plaintiff tore the photograph off the wall and confronted the supervisor, the supervisor said, " '[W]hoever posted the picture of [plaintiff], you guys quit fucking around with him because it is going to hurt his gay porn career.' " (*Ibid.*) The other supervisor urinated on plaintiff and " 'would come up behind [plaintiff] and . . . spank [his] butt all the time.' " (*Ibid.*) Plaintiff told the supervisor, " 'I'm not gay; don't touch me.' But [the supervisor] continued the behavior. Sometimes [he] 'would arouse himself in his overalls to get an erection' and then ask [plaintiff] to sit on his lap." (*Id.* at pp. 1234-1235.)

The *Taylor* court reasoned that, like the harassing coworkers in *Singleton*, the harassing supervisors in *Taylor* used sex as a weapon to create a hostile work environment for the plaintiff—i.e., they " 'employed attacks on [plaintiff's] identity as a

heterosexual male as a tool of harassment.' " (*Taylor, supra,* 222 Cal.App.4th at p. 1238.) Therefore, the *Taylor* court concluded that under *Singleton*, substantial evidence supported the jury's verdict in favor of the plaintiff. (*Ibid.*) The *Taylor* court disagreed with the *Kelley* court's reasoning that a supervisor's sexually demeaning conduct directed at an employee does not constitute sexual harassment unless a reasonable trier of fact could find it was an expression of the supervisor's sexual desire. (*Taylor, supra,* 222 Cal.App.4th at p. 1239.) The *Taylor* court observed: "The *Singleton* holding is narrow: a heterosexual male is subjected to harassment because of sex under the FEHA when attacks on his heterosexual identity are used as a tool of harassment in the workplace, *irrespective of whether the attacks are motivated by sexual desire or interest*." (*Taylor, supra,* 222 Cal.App.4th at pp. 1239-1240, italics added, fn. omitted.)

We agree with the reasoning of *Singleton* and *Taylor* and conclude that Felton presented sufficient evidence to raise triable issues of fact as to whether Nguyen harassed him because of sex by attacking his heterosexual identity, and whether the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. As noted, conduct that is *either* severe *or* pervasive enough to create an objectively hostile or abusive work environment is unlawful, even if it does not cause psychological injury to the plaintiff. (*Lyle, supra,* 38 Cal.4th at p. 283.)

The main focus of Felton's sexual harassment claim is the March 6 incident in which Nguyen said to Felton, "Pull your pants down, bend over, and let me stick my dick in your ass[,]" followed by the admonition to "do what the CEO tells you to do[.]" A single incident of harassment may be sufficient to establish liability for sexual harassment

13

if the incident was severe in the extreme, such as an incident that includes physical violence or a threat of physical violence. (*Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142, 151; *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1043.)

As noted, we evaluate the objective severity of the March 6 incident from the perspective of a reasonable person in Felton's position, considering all of the circumstances, including the social context in which the incident occurred and was experienced by Felton. (*Lyle, supra,* 38 Cal.4th at p. 283.) For purposes of defendants' motion for summary judgment, Felton's deposition testimony must be accepted as true. (*Singleton, supra,* 140 Cal.App.4th at p. 1559.) Felton, a 70-year-old man, testified at deposition that for a period of approximately two years before the March 6 incident, he had been repeatedly offended by Nguyen's lewd comments and jokes "about gays and stuff." He testified that he felt threatened during the March 6 incident because Nguyen and the other men in the restroom were speaking in Vietnamese, and he did not know what they were saying or what they might be planning to do to him. He left the restroom holding his stomach in disgust, and went outside of the building to clear his head because he was "greatly offended." When asked if he considered the March 6 incident to be a "pretty severe incident" he answered in the affirmative and testified that the incident offended him greatly and caused him to be ill, making him feel "dizzy" and "woozy."

Felton's testimony supports a reasonable inference that Nguyen's comment about engaging in anal sex with Felton caused Felton to fear that Nguyen and the other men might sexually assault him. A reasonable person in his position could reasonably feel shocked, humiliated, and physically threatened by Nguyen's lewd proposition and the fact

14

that the other men in the restroom reacted to it by laughing and speaking in a foreign language. Thus, a trier of fact could reasonably find that Nguyen's conduct was sufficiently severe to alter the conditions of employment and create a work environment that was objectively hostile or abusive to Felton. The requirement that the alleged harassment must be "because of sex" is satisfied because a trier of fact could reasonably find that Nguyen attacked Felton's identity as a heterosexual male as a tool of harassment. (*Singleton, supra,* 140 Cal.App.4th at p. 1562.) Accordingly, the trial court erred in granting defendants' motion for summary adjudication as to Felton's cause of action for sexual harassment.[5]

### III. *Remaining Causes of Action*

The trial court granted summary adjudication of Felton's fourth cause of action for failure to prevent harassment and discrimination, fifth cause of action for wrongful termination in violation of the FEHA, sixth cause of action for negligent infliction of emotional distress, and seventh cause of action for violation of the UCL on the ground that Felton "cannot establish his causes of action for racial or sexual harassment." Because we conclude the court erred in summarily adjudicating Felton's cause of action for sexual harassment, we conclude the court also erred in summarily adjudicating Felton's fourth through seventh causes of action.

---

[5] Under the FEHA, an employer is strictly liable for harassment by a supervisor. (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1040-1041.) Because it is undisputed that Nguyen was a supervisory employee, the strict liability standard applies to Felton's sexual harassment claim.

DISPOSITION

The judgment is reversed and the order granting defendants' motion for summary judgment on Felton's complaint is vacated. The court is directed to enter a new order denying defendants' motion for summary judgment, granting defendants' alternative motion for summary adjudication as to Felton's first cause of action for racial discrimination and second cause of action for racial harassment, and denying defendants' motion for summary adjudication as to the third through seventh causes of action. Felton is awarded his costs on appeal.

NARES, Acting P. J.

WE CONCUR:

McDONALD, J.

AARON, J.

16