Filed 5/28/14

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| RUTH ROSENFELD, | B239581 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC390751) |
| v. | |
| ABRAHAM JOSHUA HESCHEL DAY SCHOOL, INC., | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Alan S. Rosenfield, Judge. Affirmed.

Schonbrun Desimone Seplow Harris Hoffman & Harrison, Wilmer J. Harris, Shayla R. Myers and Tina Behboudi for Plaintiff and Appellant.

Hinshaw & Culbertson, Filomena E. Meyer, Clint D. Robison and Amy Jensen for Defendant and Respondent.

_____

In this age discrimination case, plaintiff and appellant Ruth Rosenfeld (Rosenfeld) appeals a judgment following a defense verdict in favor of her former employer, defendant and respondent Abraham Joshua Heschel Day School, Inc. (Heschel). Rosenfeld alleged Heschel repeatedly reduced her teaching hours "in an effort to force her out of her position because of her age." Heschel attributed the reduction in Rosenfeld's hours to a decline in student enrollment.

Rosenfeld does not challenge the sufficiency of the evidence to support the verdict. Her contentions relate to various evidentiary, instructional and other rulings. We affirm.

At the commencement of trial, Rosenfeld filed a trial brief indicating she would be proceeding on a *disparate impact* theory of age discrimination, in addition to a disparate treatment theory. We hold the trial court properly precluded Rosenfeld from pursuing a disparate impact theory at trial. Disparate impact and disparate treatment are different theories of employment discrimination with different elements. Rosenfeld's pleadings solely alleged a theory of disparate treatment, based upon *intentional* discrimination. Her papers were insufficient to put Heschel on notice that she intended to pursue a disparate impact theory at trial.

We also conclude the trial court properly allowed Heschel to present evidence that Rosenfeld failed to pursue Heschel's internal grievance procedure before filing suit; the evidence was relevant to mitigation of damages. It is established the "avoidable consequences doctrine applies to damage claims under the [Fair Employment and Housing Act], and that under that doctrine a plaintiff's recoverable damages do not include those damages that the plaintiff could have avoided with reasonable effort and without undue risk, expense, or humiliation." (*State Department of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1034.) Thus, the avoidable consequences doctrine enables an employer to show that reasonable use of its internal procedures would have prevented at least some of the harm the employee suffered. (*Id.* at p. 1044.)

# FACTUAL AND PROCEDURAL BACKGROUND[1]

1. *Facts.*

In 1972, Rosenfeld commenced employment at Heschel, a private Jewish elementary and middle school in Northridge. Heschel is an affiliate of the Bureau of Jewish Education (BJE), and pursuant to the BJE's Code of Personnel Practices, Rosenfeld was a tenured teacher. She taught third and fourth grade Hebrew/Judaic Studies at Heschel, and was teaching full time, amounting to 25 hours per week.

In the 2005-2006 school year, enrollment at Heschel declined by 15 students, from 455 to 440. This led to a decrease in the need for teachers and a reduction in the number of available teaching hours. Until 2005, Rosenfeld was being paid 5 hours per week for coordinating with a fellow teacher, Jodi Lasker, the Twinning Program, a program for middle school students which involved a two-week stay in Israel. Due to dissatisfaction with Rosenfeld's performance on the trip, including her poor rapport with the eighth-graders, Betty Winn, head of the school, assigned responsibility for the program solely to Lasker. Heschel renewed Rosenfeld's contract for the 2005-2006 school year, reduced to 20 hours per week, with a severance payment of $9,800 for the five hour reduction.

In the 2006-2007 school year, enrollment declined further, to 423 students. As a consequence, Rosenfeld's teaching hours were reduced further, to 15 hours per week. However, Heschel paid Rosenfeld for a 17-hour work week, so as to be able to maintain Rosenfeld's health coverage.

---

[1]     We summarize the facts in accordance with the general rule that an appellate court will view the evidence in the light most favorable to the respondent, here, Heschel. (*Gyerman v. United States Lines Co.* (1972) 7 Cal.3d 488, 492, fn. 1.) Moreover, Rosenfeld expressly concedes the sufficiency of the evidence to support the verdict. The introduction to the appellant's opening brief states: "*Each side presented substantial evidence in support of, and in opposition to, the contention that [Heschel] discriminated against Mrs. Rosenfeld on the basis of her age*." (Italics added.) Because Rosenfeld has conceded the sufficiency of the evidence to support the verdict, only those facts necessary for resolution of appellant's assignment of errors need recitation, and they are provided in accordance with the stated established rules. (See, e.g., *People v. Holmes* (1993) 12 Cal.App.4th 1094, 1097.)

For the 2007-2008 school year, enrollment declined further, to 391 students. On May 14, 2007, Winn told Rosenfeld she could only offer her 10 teaching hours for the upcoming school year, and that she would be compensated $14,658 for the 7-hour loss. Winn assured Rosenfeld she would be notified if more hours were to become available. On May 22, 2007, Rosenfeld accepted the offer in writing, indicating "I plan to return to [Heschel] for the 2007-2008 school year."

However, on August 24, 2007, three days before classes were to begin, Rosenfeld, through counsel, advised Heschel that she was "forced to resign her employment" because her work environment had become intolerable. The letter asserted that Rosenfeld's age (60) was a motivating reason for her demotion and constructive discharge.

Shortly after Heschel received this letter, five more teaching hours became available. Had Rosenfeld returned to Heschel per the contract, or employed the BJE grievance procedure, she would have taught 15 hours during the 2007-2008 school year, the same teaching load she had the previous year. Rosenfeld testified in her deposition that had she been given the same number of teaching hours as the previous year, that would have been acceptable to her.

Following Rosenfeld's hasty resignation, Heschel rushed to hire a new teacher. Rosenfeld was replaced by Tzipi Aboodi, in her mid-fifties, slightly younger than Rosenfeld. Aboodi wound up teaching the 15 hours that would have been taught by Rosenfeld.

2. *Proceedings*.

Rosenfeld initially filed a charge of age discrimination with the California Department of Fair Employment and Housing, alleging Heschel systematically reduced her hours "in an effort to force me out because of my age, in an effort to replace me with workers under 40."

Thereafter, on May 13, 2008, Rosenfeld commenced this action. The operative second amended complaint asserted causes of action for discrimination on the basis of age under the California Fair Employment and Housing Act (FEHA) (Gov. Code,

4

§ 12940, subd. (a)); constructive wrongful termination (*ibid.*); failure to prevent discrimination (*id.*, at subd. (k)); constructive wrongful termination in violation of public policy; intentional infliction of emotional distress; and negligent infliction of emotional distress.

On September 16, 2011, the matter came on for trial. On November 1, 2011, the jury returned a defense verdict. The jury, in a special verdict, specifically found Rosenfeld's age was not "a motivating reason for the reduction of her working hours."

Rosenfeld unsuccessfully moved for a new trial. Thereafter, she filed a timely notice of appeal from the judgment entered January 3, 2012.

## CONTENTIONS

Rosenfeld contends: (1) the trial court erred in precluding her from proceeding with her disparate impact claim; (2) because she was a tenured teacher, the trial court erred in allowing Heschel to argue that she was an at-will employee terminable for any lawful reason; (3) the trial court erred in admitting evidence that Rosenfeld failed to exhaust Heschel's internal grievance procedure; (4) the trial court erred in refusing to instruct on the issue of pretext; and (5) the trial court erred in denying her motion for new trial based on various other errors.

## DISCUSSION

1. *Trial court properly precluded Rosenfeld from pursuing a disparate impact claim at trial; she failed to timely advise Heschel that she would be proceeding on a disparate impact theory in addition to a disparate treatment theory.*

a. *Overview*.

On September 22, 2011, shortly after commencement of trial and before opening statements to the jury, Rosenfeld filed a trial brief indicating she would be pursuing a claim of "disparate impact," in addition to disparate treatment. Rosenfeld's disparate impact theory of age discrimination was that Winn, who took over as head of the school in 2003, wanted to change the culture of the school from long-term relationships to "best practices" and Winn's new policy "had a disproportionate effect on older teachers."

5

Heschel objected, arguing Rosenfeld's entire case had been based upon a *disparate treatment* theory of age discrimination; Rosenfeld's pleadings, discovery responses and case management conference statements never mentioned a disparate impact theory. This new theory of disparate impact constituted a material variance, so that Heschel would be prejudiced if Rosenfeld were permitted to pursue this new theory at trial.

At the hearing on the matter, Rosenfeld's counsel explained: "In our trial brief, . . . *[because] disparate impact claims are relatively unusual, relatively rare*, we wanted to just give the court the basic understanding . . . for our disparate impact claim." (Italics added.) He argued a plaintiff is not required expressly to plead disparate impact, as opposed to disparate treatment, because it is simply a cause of action under FEHA on the basis of age. Further, "if the court were to rule that there wasn't sufficient pleading of disparate impact . . . we would still be able to ask – it would be within the court's discretion to allow us to amend . . . to conform to proof."

After hearing arguments on the matter, the trial court agreed with Heschel, finding the disparate impact theory "has not been adequately disclosed to the defense for purposes of preparing a defense in this litigation." The trial court explained "you can't raise a completely different theory on the eve of trial to the prejudice of the defense after having several iterations of the complaint and – full-on discovery in the manner in which this has come up. [¶] I really do think it is prejudicial to the defense."

b. *Distinction between disparate treatment and disparate impact theories*.

"Disparate treatment" is *intentional* discrimination against one or more persons on prohibited grounds. (*Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 354, fn. 20 (*Guz*).) A disparate treatment claim, i.e., a claim that an employer has treated a particular person less favorably than others because of the plaintiff's race, sex, or other protected category, "involve[s] 'the most easily understood type of discrimination.' " (*Watson v. Fort Worth Bank & Trust* (1988) 487 U.S. 977, 985-986 (*Watson*).)

A claim of *disparate impact* differs from a claim of disparate treatment in that a plaintiff is not required to prove discriminatory motive when claiming disparate impact.

6

Disparate impact exists where, "*regardless of motive*, a facially neutral employer practice or policy, bearing no manifest relationship to job requirements, in fact had a disproportionate adverse effect on members of the protected class." (*Guz, supra*, 24 Cal.4th at p. 354, fn. 20, italics added, original italics omitted.)[2][3]  If the employee makes a showing that the employer's facially neutral policy has a disparate impact, " 'the employer must then demonstrate that "any given requirement [has] a manifest relationship to the employment in question," in order to avoid a finding of discrimination.' [Citation.]  Even in such a case, however, the plaintiff may prevail, if he shows that the employer was using the practice as a mere pretext for discrimination.' [Citations.]" (*City and County of San Francisco v. Fair Employment & Housing Com.* (1987) 191 Cal.App.3d 976, 985, quoting *Connecticut v. Teal* (1982) 457 U.S. 440, 446-447.)

c.  *Disparate treatment and disparate impact claims are different theories of liability, with different elements, and must be specifically alleged.*

*Coleman v. Quaker Oats Co*. (9th Cir. 2000) 232 F.3d 1271, is on point.[4]  There, the district court dismissed plaintiffs' disparate impact claims on the grounds that they had not pled that theory of liability in their complaint.  The plaintiffs conceded that neither their first nor second amended complaints included this theory of liability, and that the first time they raised this claim was in their summary judgment papers.  The plaintiffs contended they were not required to allege specifically the disparate impact

---

[2]      For example, in *Dothard v. Rawlinson* (1977) 433 U.S. 321, the issue presented was whether Alabama's statutory height and weight standards for prison guards had a disparate impact on female applicants.

[3]      In Government Code section 12941, the Legislature expressly declared "its intent that the disparate impact theory of proof may be used in claims of age discrimination."

[4]      "[B]ecause their objectives are the same, California courts have relied upon federal law interpreting title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) and the Age Discrimination in Employment Act (ADEA) (29 U.S.C. § 621 et seq.) to interpret the FEHA.  [Citations.]" (*Linsley v. Twentieth Century Fox Film Corp.* (1999) 75 Cal.App.4th 762, 766.)

7

theory in their complaint, or alternatively, the district court should have allowed them leave to amend to add this theory at the summary judgment stage. (*Id*. at p. 1291.)

The Ninth Circuit rejected plaintiffs' position and affirmed. It reasoned that allowing the plaintiffs "to proceed with their disparate impact theory after the close of discovery would prejudice [defendant] Quaker. A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations. *A disparate impact theory, lacking the requirement that the plaintiff prove intent and focusing on statistical analyses, requires that the defendant develop entirely different defenses, including the job relatedness of the challenged business practice or its business necessity. Neither of these are necessary to defend against a disparate treatment theory. This case illustrates the problem. At no time prior to summary judgment did* [*plaintiffs*] *identify which facially neutral Quaker employment practice they challenged as having a discriminatory impact. . . . The lack of notice on this issue central to the cause of action makes it difficult, if not impossible, for Quaker to know how to defend itself. After having focused on intentional discrimination in their complaint and during discovery, the employees cannot turn around and surprise the company at the summary judgment stage on the theory that an allegation of disparate treatment in the complaint is sufficient to encompass a disparate impact theory of liability*." (*Coleman, supra,* 232 F.3d at pp. 1292-1293, italics added.)[5]

_____

[5]    Rosenfeld's reliance on an earlier Ninth Circuit decision, *E.E.O.C. v. Local 350, Plumbers and Pipefitters* (9th Cir. 1993) 998 F.2d 641 (*E.E.O.C.*), is misplaced. Rosenfeld focuses on language therein that the "EEOC d[id] not specify in its pleadings or briefs on appeal whether it [was] proceeding under a disparate treatment or disparate impact theory of discrimination. Because in this circuit a plaintiff may challenge age discrimination under a disparate impact analysis, both theories were potentially available to the EEOC." (*Id*. at p. 648, fn. 2.)

However, in reversing the district court's grant of summary judgment, the Ninth Circuit ordered the district court to "*direct the EEOC to articulate its theory or theories of discrimination* in accordance with the principles set forth" in the pertinent case law. (*E.E.O.C.*, *supra*, 998 F.2d at p. 648, fn. 2.) The *E.E.O.C.* decision does not stand for the proposition that Rosenfeld was entitled to raise a claim of disparate impact on the eve of trial.

d. *Rosenfeld's pleadings solely alleged a theory of disparate treatment, based upon intentional discrimination; trial court properly barred her from pursuing a disparate impact claim at trial.*

The original complaint pled in pertinent part: "13. In early 2003, [Heschel] hired Betty Winn as the new Head of School. As a result of her hire, Ms. Winn has engaged in a campaign *to force teachers over 40 to quit and replace them with younger workers*. [¶] 14. Ms. Winn and [Heschel] have engaged in the same unlawful conduct with regard to Mrs. Rosenfeld's employment. In circumstances involving a tenured teacher like Mrs. Rosenfeld, the school could not terminate her except for cause, however, they could, as it occurred here, reduce her hours to the point of a constructive termination. Because Mrs. Rosenfeld could not be terminated except for cause, Ms. Winn devised a plan to force her to resign by systematically cutting her hours." These allegations, that Rosenfeld was forced to quit because of her age, were reiterated in the first amended complaint as well as the operative second amended complaint.

Thus, Rosenfeld merely pled disparate treatment, that is to say, Heschel *intentionally* discriminated against her based on her age. She did not plead disparate impact, i.e., that Heschel had a facially neutral employer practice or policy which bore no manifest relationship to job requirements but which, in fact, had a disproportionate adverse effect on older employees. (*Guz, supra*, 24 Cal.4th at p. 354, fn. 20.)

Rosenfeld's case management conference statement was consistent with her pleadings. Rosenfeld's statement of the case provided: "Plaintiff, who was a teacher at [Heschel], contends that her hours were repeatedly reduced, year after year, in an effort to force her out of her position because of her age." Again, this asserted a claim of disparate treatment, not disparate impact.

Nonetheless, on appeal, Rosenfeld contends Heschel "was clearly placed on notice of [her] disparate impact theory throughout the pretrial period," citing the following three examples: (1) she sought a continuance of Heschel's motion for summary judgment so that she could obtain the discovery necessary for her statistical expert, William

9

Lepowsky; (2) she proposed a CACI disparate impact jury instruction; and (3) she filed a trial brief on the issue of disparate impact.

These arguments are unpersuasive. A request for a continuance of a summary judgment motion in order to pursue discovery does not put a defendant on notice that plaintiff intends to pursue a disparate impact theory of age discrimination at trial, in that statistical evidence may be utilized to show *either* disparate treatment or disparate impact discrimination. (See, e.g. *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 520-521; *Watson, supra*, 487 U.S. at p. 992.) As for Rosenfeld's proposed jury instructions and trial brief relating to disparate impact, those filings occurred on the eve of trial, long after the close of discovery. Thus, Rosenfeld failed to give timely notice to Heschel that she intended to pursue a disparate impact theory at trial.

Although Rosenfeld did not allege a theory of disparate impact, she faults Heschel for failing to plead business necessity as an affirmative defense to her claim of disparate impact. (See *Watson, supra*, 487 U.S. at p. 998 [once plaintiff makes prima facie showing of disparate impact, defendant's burden is to produce evidence that its employment practices are based on legitimate business reasons].) Rosenfeld's trial brief stated: "In this case defendant has failed to articulate a business necessity argument that would account for the disparity in age between teachers negatively impacted and those not negatively impacted. Defendant did not list business necessity as one of their affirmative defenses in their answer, nor has it listed business necessity as an affirmative defense or argued business necessity in any of its filings, including its summary judgment motion. Defendant has failed to establish a job related requirement for this policy or to demonstrate a business necessity for this policy."

However, because Rosenfeld solely pled disparate treatment, there was no need for Heschel to plead business necessity as an affirmative defense in its answer, let alone to develop a business necessity defense for trial. This illustrates the prejudice to Heschel as a consequence of Rosenfeld's belated assertion of a theory of disparate impact.

In sum, on this record, the trial court properly precluded Rosenfeld from pursuing a disparate impact claim at trial.

10

2. *No merit to Rosenfeld's contention the trial court prejudicially erred in admitting evidence related to her employment status; no violation of parol evidence rule.*

By way of background, Rosenfeld and Heschel entered into a written employment contract for the 2006/2007 school year. The agreement stated in pertinent part: "ENTIRE AGREEMENT [¶] This Agreement, together with the BJE Manual, constitutes and contains the entire agreement and understanding between the parties concerning Employee's employment by Heschel and the other subject matters discussed herein. The Agreement together with the BJE Manual, supersedes all prior negotiations and agreements between the parties, whether written or oral, concerning the subject matters hereof. The terms of this Agreement may only be modified in writing, and only by Heschel's Head of School."

The parol evidence rule provides that when parties enter an integrated written agreement, extrinsic evidence may not be relied upon to alter or add to the terms of the writing, but extrinsic evidence is admissible to explain or interpret ambiguous language. (*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Association* (2013) 55 Cal.4th 1169, 1174; *Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011) 201 Cal.App.4th 368, 376.) Here, Rosenfeld contends that although she was a tenured teacher with a fully integrated contract requiring cause for termination, the trial court, in violation of the parol evidence rule, permitted Heschel to assert she was an at-will employee terminable for any lawful reason. The contention lacks merit.

As indicated, Rosenfeld's age discrimination claim was predicated on the theory that because she was a tenured teacher, Heschel could not terminate her without cause, and because Heschel lacked the ability to terminate her, it devised a plan to reduce her hours with the aim of forcing her to resign.

Heschel rebutted this theory by presenting evidence that tenured status at the school was not a guarantee of permanent employment. Heschel recognized that Rosenfeld had tenured status; however, tenured status did not mean that she could not be terminated – it just meant that she could not be terminated without severance pay, or

11

without a showing of good cause. The evidence showed: Pursuant to the BJE Code, a Hebrew/Judaic teacher at Heschel acquires tenure when he or she is rehired after 24 scheduled hours of employment for three contract years. Tenure under the BJE Code is not a guarantee of employment but rather, a salary protection policy. Under section 13.1.9 thereof, a tenured teacher whose services are terminated *without cause* is entitled to receive severance equal to $1/12^{th}$ of annual salary for each full contract year, up to a maximum severance equal to annual salary. If, on the other, a tenured teacher is terminated for cause or voluntarily resigns, no severance pay is required. The grounds for termination for cause include: failing to adequately perform one's professional duties or functions (BJE Code, § 5.12.1) and a drop in student enrollment sufficient to justify termination (*id.*, § 5.12.6).

Contrary to Rosenfeld's position, there was no violation of the parol evidence rule because extrinsic evidence is admissible to explain or interpret ambiguous language. The trial court properly admitted defense evidence, specifically, the testimony of Gil Graff, executive director of the BJE, to explain the term "tenure" within the meaning of the BJE Code, in order to clarify the nature of Heschel's contractual obligations to Rosenfeld. There was no error.

Further, and in any event, whether Rosenfeld's status was tenured or at-will is irrelevant. At-will employees, like other employees, are protected from terminations which are "motivated by legally proscribed, invidious discriminatory attitudes, such as animus toward a particular race or gender." (*Jie v. Liang Tai Knitwear Co.* (2001) 89 Cal.App.4th 654, 660.) Rosenfeld did not sue Heschel for breach of an employment contract. She sued for *age discrimination* in violation of FEHA, contending her hours were reduced in an effort to force her to resign because of her age. Rosenfeld's status as a "tenured" teacher had no bearing on her right to be free of age discrimination. As indicated, the jury, after weighing the evidence, concluded Rosenfeld's age was not "a motivating reason for the reduction of her working hours," and Rosenfeld concedes the sufficiency of the evidence to support the verdict.

For all these reasons, we reject Rosenfeld's contention the trial court prejudicially erred in admitting extrinsic evidence relating to her employment status.

3. *No merit to claim of instructional error in refusal of pretext instruction.*

a. *The proposed instruction was not a correct statement of the law.*

A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by her which is supported by substantial evidence. (*DeWitt v. Monterey Ins. Co.* (2012) 204 Cal.App.4th 233, 240.)

Rosenfeld asserts the trial court erred in refusing the following instruction relating to pretext: "Rejection of the defendant's proffered reasons for reduction of Ruth Rosenfeld's hours permit you to infer the ultimate fact of age discrimination."

In other words, the proposed instruction would have allowed the jury to infer the ultimate conclusion of age discrimination as long as they disbelieved Heschel's age-neutral reasons for reducing Rosenfeld's hours. The proposed instruction did not accurately state the law, in that "*an inference of intentional discrimination cannot be drawn solely from evidence, if any, that the company lied about its reasons.* The pertinent statutes do not prohibit lying, they prohibit discrimination. (*Hicks, supra*, 509 U.S. 502, 521.) Proof that the employer's proffered reasons are unworthy of credence may 'considerably assist' a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons. (*Id*., at p. 517.) *Still, there must be evidence supporting a rational inference that intentional discrimination, on grounds prohibited by the statute, was the true cause of the employer's actions.* (*Id*., at pp. 510-520.)" (*Guz, supra*, 24 Cal.4th at pp. 360-361, italics added.)

Because the proposed instruction did not fully comport with *Guz*, it properly was refused.

b. *Even assuming the trial court should have given the requested pretext instruction, the refusal to give the instruction was harmless.*

Even assuming the requested pretext instruction should have been given, the instructional omission was harmless.

13

As stated in *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, "there is no rule of automatic reversal or 'inherent' prejudice applicable to any category of civil instructional error, whether of commission or omission. A judgment may not be reversed for instructional error in a civil case 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.) . . . [¶] Instructional error in a civil case is prejudicial 'where it seems probable' that the error 'prejudicially affected the verdict.' [Citations.] Of course, that determination depends heavily on the particular nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury. [¶] But the analysis cannot stop there. Actual prejudice must be assessed in the context of the individual trial record. . . . Thus, when deciding whether an error of instructional omission was prejudicial, the court must also evaluate (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Id.* at pp. 580-581.)

Here, any error in refusing the proposed instruction was harmless. The issue of pretext was central to this case, and the jury was well aware of the parties' competing narratives. Rosenfeld's theory was that her employer repeatedly reduced her hours "in an effort to force her out of her position because of her age." Heschel, in turn, attributed the reduction in Rosenfeld's hours to a decline in student enrollment. Although Rosenfeld contends Heschel's stated reasons were pretextual, the jury believed Heschel's version of the events. On this record, there is no reasonable probability the jury was misled or the verdict affected by the instructional omission.

4. *No prejudicial error in admission of evidence relating to Rosenfeld's failure to pursue BJE's internal grievance procedure before filing suit.*

a. *Trial court properly allowed Heschel to present evidence that Rosenfeld failed to pursue Heschel's internal grievance procedure before filing suit; the evidence was relevant to mitigation of damages.*

By way of background, Rosenfeld brought a motion in limine to preclude Heschel from asserting that she was obligated to invoke the BJE internal grievance procedure before filing suit. The trial court denied the motion, reasoning the evidence regarding the internal grievance procedure was admissible and relevant to the issue of mitigation of damages. The ruling was proper.

It is established that the "avoidable consequences doctrine applies to damage claims under the FEHA, and that under that doctrine a plaintiff's recoverable damages do not include those damages that the plaintiff could have avoided with reasonable effort and without undue risk, expense, or humiliation." (*State Department of Health Services v. Superior Court, supra,* 31 Cal.4th at p. 1034.) In "civil actions generally, the right to recover damages is qualified by the common law doctrine of avoidable consequences. [¶] The Restatement Second of Torts states the doctrine this way: '[O]ne injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort.' (Rest.2d Torts, § 918, subd. (1).) The comment explains that this rule 'applies only to the diminution of damages and not to the existence of a cause of action.' (*Id.*, com. a, p. 500.) . . . . [¶] Although courts explaining the avoidable consequences doctrine have sometimes written that a party has a 'duty' to mitigate damages, commentators have criticized the use of the term 'duty' in this context, arguing that it is more accurate to state simply that a plaintiff may not recover damages that the plaintiff could easily have avoided." (*State Department of Health Services, supra,* 31 Cal.4th at pp. 1042-1043.)

Thus, *State Department of Health Services* held "that in a FEHA action against an employer for hostile environment sexual harassment by a supervisor, an employer may plead and prove a defense based on the avoidable consequences doctrine. In this

15

particular context, the defense has three elements: (1) the employer took reasonable steps to prevent and correct workplace sexual harassment; (2) the employee unreasonably failed to use the preventive and corrective measures that the employer provided; and (3) reasonable use of the employer's procedures would have prevented at least some of the harm that the employee suffered. [¶] *This defense will allow the employer to escape liability for those damages, and only those damages, that the employee more likely than not could have prevented with reasonable effort and without undue risk, expense, or humiliation, by taking advantage of the employer's internal complaint procedures appropriately designed to prevent and eliminate sexual harassment.*" (*State Department of Health Services*, *supra*, 31 Cal.4th at p. 1044, italics added.)

Accordingly, the trial court properly allowed Heschel to present evidence that Rosenfeld failed to pursue the internal grievance procedure which could have prevented at least some of Rosenfeld's damages.[6]

b. *Given the jury's verdict, any error in this regard was harmless*.

Even assuming the trial court erred in allowing Heschel to present evidence that Rosenfeld did not pursue the internal grievance procedure, on this record such error was harmless. As indicated, the jury found Rosenfeld's age was not "a motivating reason for the reduction of her working hours." Therefore, the jury did not reach the issue of damages. Consequently, any error with respect to the admission of evidence relating to Rosenfeld's failure to mitigate her damages was harmless.

---

[6]     As indicated, the evidence showed that shortly after Rosenfeld submitted her letter of resignation, five more teaching hours became available, so that Rosenfeld could have taught 15 hours per week, instead of 10 hours. Therefore, had Rosenfeld pursued the internal grievance procedure, she would have taught the same number of hours during the 2007-2008 school year that she taught the year before.

16

5. *No merit to Rosenfeld's contentions relating to the denial of her motion for new trial.*

      a. *Exclusion of evidence relating to Winn's comments on another employee's teaching methods.*

Susan Goldman was a longtime teacher at Heschel who left after Winn became head of the school. At trial, plaintiff's counsel asked Winn whether she ever told Goldman that her kindergarten program was "antiquated" or "outdated," or that her program was a "dinosaur." The trial court sustained defense objections that those questions were irrelevant. Rosenfeld contends the preclusion of this evidence, showing discriminatory animus, constituted prejudicial error necessitating a new trial.

We apply the abuse of discretion standard of review to the trial court's ruling on the admissibility of evidence. (*City of Ripon v. Sweetin* (2002) 100 Cal.App.4th 887, 900.) " ' "The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." ' " (*Dorman v. DWLC Corp.* (1995) 35 Cal.App.4th 1808, 1815.)

Here, the alleged remarks by Winn did not pertain to Goldman's age but to the quality of her kindergarten program and teaching methods. Further, the statements were not directed at Rosenfeld or her teaching methods. Therefore, we defer to the trial court's determination that the proffered evidence was irrelevant.

      b. *No error in allowing Winn to testify as to the number of teachers over 40.*

Defense counsel asked Winn about the number of teachers at the school of a particular age. Plaintiff's counsel objected on the grounds of hearsay, lack of foundation, and secondary evidence. The trial court overruled the objections, stating "she's the head of school. You can handle it on cross-examination."

Winn explained she compiled the information by reviewing school records. Winn then testified as follows: Between 2008 and 2010, there were 81 employees over the age of 40; of those, 32 were 50 or over, and 21 employees were 60 and over; and currently,

17

there were 58 employees age 40 or over, 25 employees were age 50 or over, and 13 employees were 60 or over.

There was no error in this regard.

c. *References at trial to plaintiff's financial condition.*

Rosenfeld contends Heschel repeatedly referred to her wealth at trial, in an attempt to characterize her as a "grasping" litigant who was trying to take advantage of the legal system. Her arguments in this regard do not withstand scrutiny.

Lawrence Kligman, a defense witness, testified, inter alia, that Rosenfeld was "nice enough to throw a retirement party for my mother, . . . [and] it was wonderful that she was able to accommodate us in her *beautiful, lovely home in Calabasas*." (Italics added.)

Although Rosenfeld now contends this was an improper reference to her wealth, the record reflects she did not make an objection below to this remark by Kligman. Therefore, the objection was waived.

The other alleged reference to her wealth is found in a single sentence in the defense closing argument. Defense counsel stated, inter alia: "Let's go to the final year. This is the year that she declined to return. She accepted the minimum offer of 10 hours. She knew more hours may be available in September. *She traveled to Tahiti; she traveled to Israel.* A week before she – she says she called the school. . . ." (Italics added.)

Rosenfeld did not object to this mention of her travels. Had there been a timely objection, the trial court could have determined how to address the matter. At this juncture, the belated objection is waived.

d. *No error in denial of enforcement of Metaforce subpoena.*

By way of background, Metaforce was a human resources consulting firm which Heschel retained when Winn became head of the school. On September 8, 2011, eight days before trial, Rosenfeld served Metaforce with a civil subpoena (duces tecum) for personal appearance and for production of documents. On September 19, 2011, the trial court denied enforcement of the subpoena, stating: "You're too late. They [Metaforce]

18

are not here. I don't know why this is being done on – beyond the day of trial. And I'm not going to take any action with regard to a late trial subpoena . . . on a third party."

In seeking a new trial, Rosenfeld contended the trial court erred in refusing to compel Metaforce to comply with the subpoena, in that under Code of Civil Procedure section 1985.3 (subpoenaing consumer's personal records), the subpoenaed records must be produced at the beginning of trial.

However, the statute provides a subpoena duces tecum for the production of personal records "shall be served in sufficient time to allow the witness *a reasonable time, as provided in Section 2020.410*, to locate and produce the records or copies thereof." (Code Civ. Proc., § 1985.3, subd. (d), italics added.) "Reasonable time" means the subpoena shall command compliance "on a date that is no earlier than 20 days after the issuance, or 15 days after the service, of the deposition subpoena, whichever date is later." (Code Civ. Proc., § 2020.410, subd. (c); Weil & Brown, Cal. Prac. Guide: Civ. Pro. Before Trial (Rutter Group 2013) § 8:592.1, p. 8E-63.) Therefore, the trial court properly refused to enforce the Metaforce subpoena, served eight days before trial.[7]

---

[7] Leaving aside the issue of timeliness, Heschel also asserted Rosenfeld had already sought and received over 23,000 pages of employee files and documents, which contained all the information that plaintiff could possibly need to prosecute this action.

## DISPOSITION

The judgment is affirmed.  Heschel shall recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**


KLEIN, P. J.


We concur:



CROSKEY, J.



ALDRICH, J.