Filed 7/24/15  Chaudhry v. Cal. Dept. of Corrections CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| ASHFAQ CHAUDHRY, | |
| Plaintiff and Appellant, | E059366 |
| v. | (Super.Ct.No. RIC1113593) |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | O P I N I O N |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni and Dallas Holmes, Judges.[*]  Affirmed.

Law Offices of Zulu Ali, Zulu Ali, and Maleha Khan-Avila for Plaintiff and Appellant.

---

[*] Judge Perantoni presided over the April 26, 2013, hearing on the motion for summary judgment and signed the June 4, 2013, order granting said motion.  Judge Holmes is a retired judge of the Riverside Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution and signed the August 15, 2013, judgment granting the motion.

1

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Assistant Attorney General, and Chris A. Knudsen and Terry R. Price, Deputy Attorneys General, for Defendant and Respondent.

## I. INTRODUCTION

Plaintiff and appellant, Ashfaq Chaudhry, is a Sunni Muslim and a correctional officer employed by defendant and respondent, California Department of Corrections and Rehabilitation (CDCR). After he requested and was denied a shift change to allow him to attend Taraweeh prayers during the Muslim Holy Month of Ramadan, he sued CDCR for violation of the Fair Employment and Housing Act (FEHA). (Gov. Code, § 12940.) CDCR moved for summary judgment based on grounds, among others, that Chaudhry could not establish a prima facie case of discrimination because there was no conflict between Chaudhry's religious observance and his work requirements. CDCR also asserted that if Chaudhry could establish a prima facie case, CDCR reasonably accommodated his religious observance.

Following a hearing, the trial court granted CDCR's motion. The court found that CDCR met its burden of showing that Chaudhry could not establish a prima facie case for discrimination and could not establish the existence of triable issues of material fact.

Reviewing the case de novo, we conclude, as the trial court did, that there are no triable issues of material fact as to the existence of a conflict between Chaudhry's religious observance and his work requirements and, if there was, CDRC reasonably accommodated his religious observance. We therefore affirm the judgment.

2

## II.  BACKGROUND

A.  *Undisputed Facts*

Chaudhry is a born and raised Sunni Muslim.  In July 1995, he began employment as a correctional officer for CDCR.  CDCR has at all times been aware of Chaudhry's religious beliefs.

Sunni Muslims perform five prayers each day:  before sunrise; between noon and 2:00 p.m.; an hour before sunset; right after sunset; and between 8:00 p.m. and 10:00 p.m. or until midnight.  The prayers last about five minutes.  Chaudhry routinely offers these five prayers at work, taking five minutes to clean himself appropriately, find a quiet place, and offer his prayers.

As a practicing Sunni Muslim, Chaudhry is obligated to observe the month of Ramadan and its corresponding religious practices. The Holy Month of Ramadan consists of daily fasting from dawn until dusk, praying five times a day, and participating in an additional prayer called Taraweeh.  The Taraweeh prayer takes place inside a mosque after sunset.  Sunni Muslims may be excused from performing his or her Taraweeh prayer only under extreme circumstances.  The Taraweeh prayer starts after the last of the five usual prayers and lasts about one hour.

Since 1996, Chaudhry has been assigned to the California Rehabilitation Center (CRC) and Patton State Hospital (PSH).  Chaudhry is a member of a correctional officer's union and is subject to the terms of a collective bargaining agreement (CBA)

with the State of California.  A CBA expired on July 2, 2006, and a subsequent CBA became effective April 1, 2011.

At CRC, the first watch was from 10:00 p.m. to 6:00 a.m.; the second watch was from 6:00 a.m. to 2:00 p.m.; and the third watch was from 2:00 p.m. to 10:00 p.m. During the time Chaudhry was assigned to PSH, the first watch was from midnight to 8:00 a.m.; the second watch was from 8:00 a.m. to 4:00 p.m.; and the third watch was from 4:00 p.m. to midnight.  The second watch was the preferred shift for almost 99 percent of the correctional officers.  PSH now follows the same watch schedule as CRC.

Most correctional officer positions are filled by a "post and bid" system by which correctional officers bid for open positions based on their seniority.  The most desirable positions get filled by officers with the most seniority.  The post and bid procedure is a part of the CBA.  It operates whenever there is a vacant position.  Approximately every two or three years, there is a "Big" post and bid where most or all positions, vacant or not, are subject to an open bidding process for eligible correctional officers.  Under the CBA, correctional officers are not eligible to participate in any post and bid process during the period in which they are under disciplinary action.

In August 2007, Chaudhry was involved in a dispute with Sergeant Johnny Morales and Sergeant Linda Aguilar regarding Chaudhry not wearing his safety vest.  On November 13, 2007, Chaudhry was served with a Notice of Adverse Personnel Action based on his insubordination, discourteous treatment, and failure of good behavior in his interactions with Sergeants Morales and Aguilar; the official reprimand became effective

4

as of November 25, 2007, and ended November 24, 2010. As a result, Chaudhry was not eligible to participate in any post and bid process during that time.

Chaudhry appealed the adverse action to the State Personnel Board (SPB). On December 15, 2008, the SPB issued a decision, which sustained the adverse action, resulting in Chaudhry remaining on first watch at PSH until March 1, 2010. Chaudhry did not file any other claims or further appeals on the adverse action.

On March 3, 2008, while assigned to first watch at PSH, Chaudhry sent a memorandum to PSH Watch Commander Lieutenant J. Cleland requesting an assignment to second watch and to have Thursdays and Fridays off to observe his "religious obligation." On March 7, 2008, Lieutenant Cleland informed Chaudhry that he already had Thursdays and Fridays off, and that his request for second watch with Thursdays and Fridays off could not be granted because there were no available positions that met that criteria.

On June 24, 2008, Chaudhry sent Lieutenant Cleland another memorandum requesting the same accommodation of assignment to second watch with Thursdays and Fridays off for Ramadan 2008. Lieutenant Cleland responded on July 25, 2008, reiterating that Chaudhry already had Thursdays and Fridays off and there were no vacant second watch positions.

Chaudhry filed an appeal with SPB alleging he was denied reasonable accommodation for his religious practices for the 2008 time period. On March 25, 2010, SPB denied the appeal. Chaudhry was afforded no monetary or nonmonetary relief and

5

SPB ordered CDCR not to take any further accommodative action. SPB found: Chaudhry attended all the services at his mosque during Ramadan that he wanted to attend; Chaudhry did not establish a prima facie case of religious discrimination based on failure to accommodate his religious observances; and CDCR did not fail to provide Chaudhry with a reasonable accommodation.

On August 5, 2009, Chaudhry attended an SPB hearing regarding his religious accommodation requests for Ramadan 2009. The administrative law judge (ALJ) ordered and obtained reports that there were no available second watch vacancies that satisfied Chaudhry's request. The ALJ did not order any further accommodation or action by CDCR.

On August 10, 2009, Chaudhry submitted another request for accommodation of his religious practices to Captain A.C. Hernandez at PSH. Specifically, he requested a transfer to any second watch position at PSH and to be exempt from working overtime between August 21 and September 21, 2009—the month of Ramadan. The next day, Captain Hernandez informed Chaudhry that there were no available second watch positions, that the ALJ did not order CDCR to take any further accommodation, and that he would "welcome any interaction with [Chaudhry] in an effort to facilitate [Chaudhry's] request to be exempt from mandatory overtime."

On August 19, 2009, Chaudhry sent a handwritten memorandum to Captain Hernandez to inquire whether he had "swap privileges," which would allow him to swap shifts with other officers. On August 24, 2009, Captain Hernandez informed Chaudhry

6

he did have swap privileges. Chaudhry was also granted a temporary exemption from mandatory overtime and told he could make any shift swaps with other officers he felt were necessary.

On March 1, 2010, the earliest date on which Chaudhry could participate in post and bid positions, he bid for and was assigned to a second watch position at CRC.

B. *Chaudhry's Complaint*

In March 2012, Chaudhry filed his second amended complaint against CDCR alleging a single cause action for violation of FEHA due to CDCR's refusal to accommodate his religious practices during Ramadan 2009. In the complaint, Chaudhry alleged the following: he was a correctional officer employed by CDCR and a practicing Sunni Muslim obligated to observe the month of Ramadan; the Taraweeh prayer is performed during Ramadan after sunset, lasts roughly two to four hours, and is held at the mosque every night; during Taraweeh prayers, recitations of the entire Quran, the Muslim holy book, are completed over the month; under FEHA, he has a right to perform his mandatory religious duties and CDCR is required to accommodate his religious observances so long as it incurs no undue hardship on CDCR.

Chaudhry further alleged: since 2006, CDCR engaged in unlawful employment practices at CRC by creating an uncomfortable and unaccommodating work environment for minority employees, including Muslim employees; CDCR has engaged in a pattern or practice of denying reasonable religious accommodations for mandatory religious practices; higher ranking officers and supervisors singled out Chaudhry, who had been

7

subjected to humiliation and ridicule based on his religion; and CDCR failed to

adequately respond to, and denied, requests for reasonable accommodation.  In particular,

Chaudhry alleged facts regarding his August 10, 2009, request for a shift change to

accommodate his religious practices during the month of Ramadan 2009, CDCR's denial

of that request, his further request on August 19, 2009, and CDCR's failure to respond to

that request due to its "neglect and indifference."  Chaudhry sought declaratory and

injunctive relief, as well as damages.

C.  *Motion for Summary Judgment*

CDCR filed its motion for summary judgment in February 2013.  CDCR asserted

that Chaudhry failed to establish the prima facie element of a conflict between a religious

belief and an employment requirement and, if there was a conflict, CDCR reasonably

accommodated him.

In his opposition, Chaudhry asserted that there was a conflict and he was not

reasonably accommodated, any accommodation was not appropriate because there was

no CBA in place, and the SPB did not adjudicate the same religious accommodation

claim.

Following a hearing, the court found that Chaudhry could not establish a prima

facie case for discrimination based on a failure to accommodate Chaudhry's religious

practice and granted CDCR's motion.  Chaudhry appealed.

III. DISCUSSION

A. *Applicable Law*

    1. <u>Failure to Accommodate Religious Observance Under FEHA</u>

Under FEHA, an employer may not discriminate against an employee "in compensation or in terms, conditions, or privileges of employment" based on "religious creed." (Gov. Code, § 12940, subd. (a); *California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1011 (*Gemini*).) Furthermore, an employer may not discriminate "because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer . . . demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties that conflict with his or her religious belief or observance or permitting those duties to be performed at another time or by another person, but is unable to reasonably accommodate the religious belief or observance without undue hardship . . . on the conduct of the business of the employer . . . ." (Gov. Code, § 12940, subd. (*l*).) "Religious belief or observance . . . includes, but is not limited to, observance of a Sabbath or other religious holy day or days . . . ." (*Ibid.*)

"Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354.) California has adopted the burden-shifting test established by the United States Supreme Court for

trying claims of discrimination based on a theory of disparate treatment. (*Ibid*.) "'Disparate treatment' is *intentional* discrimination against one or more persons on prohibited grounds." (*Rosenfeld v. Abraham Joshua Heschel Day School, Inc*. (2014) 226 Cal.App.4th 886, 893.)

Under this burden-shifting process, the plaintiff has the initial burden of establishing a prima facie case of discrimination. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214.) There are three elements to a prima facie case of failing to accommodate an employee's religious practices under Government Code section 12940, subdivision (*l*): "[T]he employee sincerely held a religious belief; the employer was aware of that belief; and the belief conflicted with an employment requirement." (*Gemini*, *supra*, 122 Cal.App.4th at p. 1011.) Of these, CDCR challenges only the third: that there was a conflict between Chaudhry's belief and an employment requirement.

If the employee establishes a prima facie case, the burden shifts to the employer to establish that "'it initiated good faith efforts to accommodate or no accommodation was possible without producing undue hardship. [Citations.]'" (*Gemini*, *supra*, 122 Cal.App.4th at p. 1011, quoting *Soldinger v. Northwest Airlines, Inc.* (1996) 51 Cal.App.4th 345, 370.) The defendant "bears the burden of proving by a preponderance of the evidence the existence of legitimate, nondiscriminatory reasons for the employment action . . . ." (*Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 252.) To do this, the defendant must clearly set forth, through admissible evidence, the reasons for the employment action that are "legally sufficient to justify a judgment for

10

the defendant." (*Id*. at p. 255.) If the defendant does so, the plaintiff must show that the proffered reasons are a pretext for discrimination, or produce other evidence of a discriminatory motive. (*Harris v. City of Santa Monica*, *supra*, 56 Cal.4th at pp. 214-215.) "The ultimate burden of persuasion on the issue of discrimination remains with the plaintiff." (*Id.* at p. 215.)

### 2. Summary Judgment and Standard of Review

Summary judgment is appropriate when all papers submitted show there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) Summary judgment allows a party to show that material factual claims arising from the pleadings need not be tried because they are not in dispute. (*Andalon v. Superior Court* (1984) 162 Cal.App.3d 600, 604-605.)

"When the defendant moves for summary judgment . . . the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' [Citation.]" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003, quoting *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at 854.)

If the defendant carries its burden, the burden of production shifts to the opposing party to make a prima facie showing of the existence of a triable issue of material fact.

11

(*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at 850; Code Civ. Proc., § 437c, subd. (p)(2).) A prima facie showing is one that is sufficient to support the position of the party in question. (*Aguilar v. Atlantic Richfield Co.*, *supra*, at p. 851.)

"In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth . . . and all inferences reasonably deducible from the evidence . . . ." (Code Civ. Proc., § 437c, subd. (c).) "Although a party may rely on reasonable inferences drawn from direct and circumstantial evidence to satisfy its burden on summary judgment, [courts] do not draw inferences from thin air." (*Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 592.) "[I]f any evidence or inference therefrom shows or implies the existence of the required element(s) of a cause of action, the court must deny a defendant's motion for summary judgment . . . because a reasonable trier of fact could find for the plaintiff." (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1474.) "'But if the court determines that all of the evidence presented by the plaintiff, and all of the inferences therefrom, show and imply [the existence of a required element of a cause of action] *only as likely as* [its nonexistence] *or even less likely*, it must then grant the defendant['s] motion for summary judgment . . . , even apart from any evidence presented by the [defendant] or any inferences drawn therefrom, because a reasonable trier of fact could not find for the plaintiff." (*Ibid.*)

We review the grant of a motion for summary judgment de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60.) In reviewing the trial court's decision, we take

12

the facts from the record that was before the trial court when it ruled on the motion. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) We consider all the evidence set forth in the moving and opposing papers, except that to which objections were made and sustained. (*Ibid.*)

B. *There is No Triable Issue as to Any Conflict Between Chaudhry's Religious Practices and His Employment*

CDCR claims the undisputed evidence establishes there was no conflict between Chaudhry's religious practice and his work schedule; therefore, Chaudhry could not establish a prima facie claim of discrimination. Chaudhry claims that a triable issue of material fact exists because his shift directly conflicted with his religious practice. We agree with CDCR.

"[I]n general, employees do not have '[a]n inflexible duty to reschedule' their religious ceremonies." (*Tiano v. Dillard Dept. Stores, Inc.* (9th Cir. 1998) 139 F.3d 679, 682, quoting *Heller v. EBB Auto Co.* (9th Cir. 1993) 8 F.3d 1433, 1439.) Therefore, an employer has the duty to accommodate upon notice that there is an actual conflict between a religious observance and a job-related requirement. (*Wilkerson v. New Media Technology Charter School* (3d Cir. 2008) 522 F.3d 315, 319.) This duty is triggered when the employee tells the employer that he has a "religious obligation" and would be unable to perform his job-related requirement. (*Gemini*, *supra*, 122 Cal.App.4th at p. 1016.) However, the employee must provide enough information to make the employer aware that there is an actual conflict between the employee's religious observance and

13

the requirement for performing the job.  (Equal Employment Opportunity Commission (EEOC) Directives Transmittal No. 915.003:  Religious Discrimination (July 22, 2008) EEOC Compliance Manual, § 12-IV, p. 46.)

As stated above, in deciding whether CDCR is entitled to summary judgment, we must determine what any evidence submitted by Chaudhry or inference therefrom "'*could show or imply to a reasonable trier of fact*.'"  (*Smith v. Wells Fargo*, *supra*, 135 Cal.App.4th at p. 1489.)  "Therefore, if any evidence or reasonable inference therefrom shows or implies the existence of the required element(s) of a cause of action, the trial court was required to deny [CDCR]'s motion for summary [judgment] because a reasonable trier of fact could find for [Chaudhry]."  (*Ibid*.)  "'But if the court determines that all of the evidence presented by [Chaudhry], and all of the inferences therefrom, show and imply [the existence of a required element of a cause of action] *only as likely as* [its nonexistence] *or even less likely*, it must then grant [CDCR]'s motion for summary [judgment], even apart from any evidence presented by [CDCR] or any inferences drawn therefrom, because a reasonable trier of fact could not find for [Chaudhry].'"  (*Ibid.*)

Applying this standard, we conclude a reasonable trier of fact could not infer from the evidence that the existence of a conflict within Chaudhry's cause of action is more likely than its nonexistence.  In his deposition, Chaudhry explained that the Taraweeh prayer occurs during Ramadan, takes place at a mosque, starts after the last of the five daily prayers, and lasts about one hour.  He also stated that the Taraweeh prayer starts between 8:00 p.m. and 10:00 p.m., and that his first watch started at midnight.  Therefore,

14

if the Taraweeh prayer begins at the latest possible start time, 10:00 p.m., it would be completed by 11:00 p.m.—one hour before Chaudhry's shift began at midnight. Chaudhry does not allege or assert that he could not travel from the mosque to his place of work in that hour. Indeed, Chaudhry admitted that he was able to complete his Ramadan prayers and report to first watch by midnight. Although this admission was made in response to a question about a period of time in August 2008, there is nothing in the record from which we can reasonably infer that Chaudhry's travel time between the mosque and work had changed in 2009. Therefore, based on the undisputed facts, there is no triable issue of material fact as to any conflict between Chaudhry's religious observations and the requirement that he report to his first watch shift by midnight. Because Chaudhry cannot establish a prima facie case of discrimination, CDCR is entitled to summary judgment.

C. *CDCR Provided Reasonable Means of Accommodating Chaudhry's Religious Observance*

Even if a triable issue of fact exists with respect to a conflict between Chaudhry's religious practices and his work requirements, CDCR has also established that it reasonably accommodated Chaudhry's requests regarding Ramadan 2009 as a matter of law.

Once a prima face case with sufficient evidence is established by the employee, the burden shifts to the employer to show that "'it initiated good faith efforts to accommodate or no accommodation was possible without producing undue hardship.

15

[Citations.]'" (*Gemini*, *supra*, 122 Cal.App.4th at p. 1011, quoting *Soldinger v. Northwest Airlines, Inc.*, *supra*, 51 Cal.App.4th at p. 370; Gov. Code, § 12940, subd. (*l*).)

An individual alleging denial of religious accommodation is seeking an adjustment to a neutral work rule that infringes on the employee's ability to practice his religion. The accommodation requirement is "plainly intended to relieve individuals of the burden of choosing between their jobs and their religious convictions, where such relief will not unduly burden others." (EEOC Directives Transmittal No. 915.003: Religious Discrimination, *supra*, EEOC Compliance Manual, § 12-IV, p. 46, quoting *Protos v. Volkswagen of America, Inc.* (3d Cir. 1986) 797 F.2d 129, 136.) "Reasonable accommodation may include, but is not limited to, job restructuring, job reassignment, modification of work practices, or allowing time off in an amount equal to the amount of non-regularly scheduled time the employee has worked in order to avoid a conflict with his or her religious observances." (Cal. Code Regs., tit. 2, § 11062, subd. (a).)

Here, there were no second watch positions open to reasonably accommodate Chaudhry's request for a shift change. Although an ALJ had not ordered any accommodations, Captain Hernandez informed Chaudhry in August 2009 that he would "welcome any interaction" with Chaudhry regarding his request to be exempted from mandatory overtime. Later that month, Captain Hernandez responded to Chaudhry's inquiry about swap privileges by affirming that Chaudhry did have such privileges. Chaudhry was also granted a temporary exemption from mandatory overtime and told he was able to make any shift swaps with other officers he felt were necessary. These

16

actions constitute good faith efforts by CDCR to accommodate Chaudhry's requests as a matter of law. Therefore, even if a conflict existed between Chaudhry's religious observance of Ramadan 2009 and CDCR's work requirements, there are no triable issues of material fact on this issue of reasonable accommodation and CDCR is entitled to summary judgment.

## IV. DISPOSITION

The judgment is affirmed. Each party shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING

_____

J.

We concur:

RAMIREZ

_____

P. J.

HOLLENHORST

_____

J.

17